BERGENTHAL, Respondent, vs. BOYNTON AUTOMOBILE LIV-
ERY COMPANY and another, Appellants, and STATE
GARAGE & TRUCKING COMPANY, Respondent.

*November 9—December 5, 1922.*

*Automobiles: Taxicab and auto-livery companies: Injuries to
passengers: Corporations with common officers and offices:
Liability: Estoppel: Negligence: Leaving disabled truck in
street: Question for jury.*

1. In an action to recover for personal injuries brought by one
   who had been a passenger in a taxicab against the taxicab
   company and a trucking company with whose disabled truck
   the taxicab collided, it cannot be said that it is negligence as
   a matter of law to leave a disabled truck standing on the
   pavement of a main street about twelve feet from the curb,
   awaiting repairs, from 3:30 p. m. until midnight, particularly
   in view of the fact that the jury found that the truck was
   sufficiently lighted.
2. If an automobile livery company which did not engage in the
   cab business undertook to provide the plaintiff with a cab, it
   was its duty to furnish a safe taxicab and a careful driver;
   but where a call over the telephone requesting that a taxicab
   be sent to a certain place was received by a person who was
   an employee both of the livery company and of a cab com-
   pany which occupied the same offices, and the cab sent in
   response to the call was owned by the cab company and driven
   by one of its drivers, the livery company was not liable in
   case of the driver's negligence.
3. The livery company was not estopped to assert that the cab
   was furnished by the cab company, particularly where the
   party ordering, upon getting the proper connections, made
   no effort to determine which company he was talking to nor
   disclose that he was accustomed to deal with and pay through
   the livery company.
4. The mere fact that corporations have common officers and oc-
   cupy common offices and to a certain extent transact business
   for each other does not make one corporation liable for the
   acts of the other except on established legal principles.
5. Such corporations may still contract with each other, and
   their contracts are valid and can only be assailed on the
   ground that they are unfair or fraudulent.

Bergenthal v. Boynton A. L. Co. 179 Wis. 42.

APPEALS from a judgment of the circuit court for Milwaukee county: WALTER SCHINZ, Circuit Judge. *Affirmed as to one appellant; reversed as to the other.*

Personal injury. On the evening of September 30, 1919, the plaintiff and two companions, White and Lawrence, were about to return to their homes. It had been a misty, rainy day, and while on their way home it commenced to rain harder and the plaintiff suggested that a cab be called. For that purpose the three entered the place of business of one Riedl. There the plaintiff directed White to call up a telephone number which he then gave him. This he did and requested in response to the answer that a cab be sent to Riedl's place. In about fifteen minutes the cab was driven from the Plankinton Hotel to Riedl's café on the west side of East Water street between Huron and Detroit streets in the city of Milwaukee. Upon the arrival of the cab the plaintiff and his companions entered it and were taken from Riedl's café to the office of the Red Star Yeast & Products Company, near Broadway on Buffalo street, a distance of about three blocks, where they stopped for a moment. The cab then turned onto Broadway from Buffalo street, Broadway being one of the principal streets of Milwaukee running north and south. On the afternoon of that day a Stegeman dump truck, owned and operated by the *State Garage & Trucking Company,* had become disabled on Broadway, about one half block north of the intersection of Broadway and Huron streets and some ten or twelve feet west of the east curb. The disabled truck remained on the street where it stalled from about 3:30 o'clock in the afternoon until some time about midnight. The truck was a large one and with its load weighed about five and seven-eighths tons. Effort was made to repair the truck, but trips were necessary in order to secure the necessary parts and tools, and the repair was not completed until nearly midnight, when the truck was driven to the place where it was intended to be unloaded.

There is considerable dispute in the evidence as to whether or not the position of the disabled truck was sufficiently disclosed by lights, it being claimed on behalf of the plaintiff that there were not sufficient lights and on behalf of the defendants that there were.

The cab containing the plaintiff and his companions proceeded north, and after it had gone more than a block the driver of the cab saw the truck but could not tell whether it was standing or moving. When about fifteen feet from the truck he discovered it was standing and he immediately put on his brakes and veered as sharply as he could to the left. The cab failed to clear the truck, and the right front wheel, fender, and right side of the hood of the cab ran under the left rear end of the truck box about two and a half feet and struck the left rear wheel of the truck. The accident occurred about 9:45 o'clock at night. As the result of the collision plaintiff sustained serious injuries, and this action was begun by the plaintiff against the defendants to recover damages for the injuries sustained.

In response to a special verdict the jury found:

(1) That the taxicab was operated at a speed in excess of fifteen miles per hour as it approached the place where the collision with the truck occurred.

(2) That the operation of the taxicab at such speed was a proximate cause of the collision.

(3) That the head lamps on the taxicab, at and immediately prior to the time of the collision, did not enable the taxicab driver to clearly distinguish a person, vehicle, or other substantial object 200 feet ahead.

(4) That the fact that the head lamps did not enable the taxicab driver to clearly distinguish such objects 200 feet ahead was a proximate cause of the collision.

(5) That the taxicab driver failed to exercise ordinary care in the operation of the taxicab at and immediately prior to the time of the collision.

(6) That such failure was a proximate cause of the collision.

Bergenthal v. Boynton A. L. Co. 179 Wis. 42.

(7) That the employees of the defendant *State Garage & Trucking Company* did not fail to provide the truck with sufficient lights, of such design and so adjusted and operated as to render the use of Broadway by other vehicles, at the time and place of the collision, safe for all the public.

(8) ———.

(9) That the employees of the *State Garage & Trucking Company* did not fail to exercise ordinary care in leaving the truck at the place where it was at the time of the collision.

(10) ———.

(11) Assessed plaintiff's damages at $12,500.

(12) Assessed the damages to taxicab, $145.25.

Other material facts are stated in the opinion. There were the usual motions after verdict. Judgment was entered upon the verdict against the *Boynton Automobile Livery Company* and *Green Cab Company,* and from the judgment so entered the defendants appeal.

For the appellants there was a brief by *Olwell, Durant & Brady,* attorneys, and *McMahon, McMahon & Hayes,* of counsel, all of Milwaukee, and oral argument by *Lawrence A. Olwell.*

For the respondent *Bergenthal* there was a brief by *Schmitz, Wild & Gross* of Milwaukee, and oral argument by *Adolph J. Schmitz.*

For the respondent *State Garage & Trucking Company* there was a brief by *Dale C. Shockley,* attorney, and *Edgar P. Ettenheim,* of counsel, both of Milwaukee, and oral argument by *Mr. Shockley.*

ROSENBERRY, J. It is first contended on behalf of the appellants that the *State Garage & Trucking Company* was negligent as a matter of law in leaving the truck at the place and time in question upon the public streets of Milwaukee. This contention raises the question of whether or not the truck was sufficiently lighted or whether or not the defend-

ant *State Garage & Trucking Company* was in the exercise
of ordinary care in leaving it at the place in question. Both
of these contentions were found against the appellants by
the jury and that finding has received the approval of the
trial court. There. is a substantial conflict in the evidence
as to the. manner in which the truck was lighted and a
finding by the jury either way could not be disturbed. As
to whether or not it was negligence for the *State Garage &
Trucking Company* to leave its truck in the street at the
time and place in question was a matter peculiarly within
the province of the jury. Certainly it could not be said, if,
as the jury found, it was sufficiently lighted, to be negli-
gence as a matter of law. The evidence.upon these points
was voluminous and we shall not ·attempt to restate it.
Within well established rules a jury issue was presented,
and the finding of the jury upon these questions is con-
clusive.

It is next argued that the court erred in refusing to
grant the motion of the defendant *Boynton Automobile
Livery Company* for a directed verdict as to it and in deny-
ing the motion for judgment notwithstanding the verdict.
The facts upon which this contention is based are undis-
puted and are substantially as follows: The cab in which
the parties were riding at the time the accident happened
was owned and operated by the *Green Cab Company* and
the driver of the cab was then in the employ of and paid
by that company. As appears from the statement of facts,
the plaintiff gave one of his companions, Mr. White, a
telephone number and requested Mr. White to call a taxi-
cab. Whether the plaintiff requested White to call the
*Boynton Automobile Livery Company* or not is immaterial,
because it is undisputed that when Mr. White did call the
number which was given him he did not disclose his identity
or. state that he was calling the cab on behalf of *Mr. Ber-
genthal* or inquire whether or not the response came' from
the *Boynton Automobile Livery Company.*

It appears that before the advent of the automobile Mr. Boynton, predecessor of the present owners, conducted a very widely and favorably known livery business in the city of Milwaukee; that that business was succeeded by the *Boynton Automobile Livery Company,* which furnishes limousines and touring cars, but does not and has not engaged in the cab business. Some time after the organization of the *Boynton Automobile Livery Company,* which was organized for the purpose of conserving the good will of the Boynton livery business, the stockholders of the *Boynton Automobile Livery Company* decided to engage in the cab business, and for that purpose a separate corporation known as the *Green Cab Company* was organized. It has the same stockholders and officers, and the same persons constitute the board of directors of both companies. Both companies occupy the same office and each occupies a part of the same building, and the persons who are employed as office men and bookkeepers perform a like service for both companies. It further appears that each company hires and pays its own drivers and that each company pays its own rent. They have a common telephone—Broadway 22. It further appears that the *Green Cab Company* does no credit business excepting in a few instances where, in order to accommodate old customers, credit is extended. The accounts of such customers are kept by the *Boynton Automobile Livery Company* and the bills rendered by it, and for that service the *Green Cab Company* pays it ten cents per item. It further appears that in connection with the corporate name the word "Boynton's" is printed on the side of the taxicabs which are owned by the *Green Cab Company.*

It does not appear upon what ground the court denied the motions, but it is argued here that the judgment be sustained upon two grounds: (1st) because the *Livery Company* owed the plaintiff a duty to provide a safe taxicab and a careful driver; and (2d) because the *Boynton Automo-*

*bile Livery Company* is estopped from denying that it provided the taxicab and driver. There can be no question but that if the defendant *Boynton Automobile Livery Company* undertook to provide a taxicab for the plaintiff at the time and place in question, it was its duty to provide a safe taxicab and a careful driver. However, we are pointed to no evidence in the record and we find none which shows that the *Boynton Automobile Livery Company* undertook to provide a cab for the plaintiff at the time and place in question. The telephone operator who responded to the call made by Mr. White at the request of the plaintiff was just as much an employee of the *Green Cab Company* as of the *Boynton Automobile Livery Company*. The person making the call did not inquire whose employee or agent the operator was, but simply requested that a cab be sent to Riedl's café. In response to this request the telephone operator directed the cab driver, who was then stationed at the Plankinton Hotel, to proceed across the river and respond to the call. How or in what respect this makes the *Boynton Automobile Livery Company* liable we are unable to see.

The principal elements of estoppel are also entirely wanting. If Mr. White, when a response was made to the telephone call, had asked if that was the *Boynton Automobile Livery Company,* and, upon being assured that it was, had then requested that the *Boynton Automobile Livery Company* send a cab, a different situation would be presented. It is very doubtful at least whether under such circumstances the *Livery Company* would be liable if it exercised proper care in the selection of a cab and driver. Certainly no element of estoppel could arise relating to the manner in which the business had theretofore been conducted unless and until the identity of the person desiring the service was disclosed and it appeared that in reliance on a prior course of business he was led by an employee to suppose that he was dealing solely with the *Boynton Automobile Livery*

*Company;* but that fact does not appear. While it does appear that *Mr. Bergenthal* had at prior times had the service of cabs owned by the *Green Cab Company* and that he paid for them on bills rendered by the *Boynton Automobile Livery Company* and upon those occasions supposed he was dealing with that company, such course of dealing can have no materiality here where *Bergenthal's* identity was not disclosed and therefore the *Boynton Automobile Livery Company* could not know it was dealing with one with whom it had had previous dealings. The evidence clearly shows that in this instance neither the plaintiff nor White relied upon a previous course of dealing. The mere fact that corporations have common officers and occupy common offices does not make the one corporation liable for the action of the other, except upon established legal principles. The mere fact that they have officers in common and places of business in common and to a certain extent transact business for each other does not of itself make them liable each for the acts of the other. *In re Watertown P. Co.* 169 Fed. 252; 14 Corp. Jur. p. 58, § 19, and cases cited. Such corporations have a right to contract with each other and their contracts are valid and can only be assailed on the ground that they are unfair or fraudulent. 14A Corp. Jur. p. 125, § 9; 4 Fletcher, Corp. p. 3631, § 2376.

There is in this case not the slightest intimation that there was anything unfair or fraudulent in the conduct of the defendant corporations or that one was used as a cover for the other for any ulterior purpose. The plaintiff never having contracted or attempted to contract with the defendant *Boynton Automobile Livery Company* and there being no facts out of which an estoppel can arise, we must hold that so far as the *Boynton Automobile Livery Company* is concerned no liability is shown.

*By the Court.*—Upon the appeal of the *Boynton Automobile Livery Company,* judgment is reversed. Upon the appeal of the *Green Cab Company,* judgment is affirmed.

The defendants having appeared by the same counsel and having joined in the printing of the case and briefs, upon the taxation of costs the expense thereof shall be attributable one half to each and the costs taxed accordingly.