No. 25,595.

THE WHITEWATER TELEPHONE COMPANY, *Appellee*, v. T. C. CORY,
*Appellant.*

SYLLABUS BY THE COURT.

1. CORPORATION—*Director Serving as Secretary-Treasurer Not Entitled to Compensation for Services Without Showing Contract Therefor with Board of Directors.* Where a director of a corporation served as its secretary-treasurer for one year without compensation for his services as such secretary-treasurer until the day when he retired from office, at which time he received $600 as a year's salary, pursuant to an arrangement which he had made with one member of the corporation's board of seven directors, of which arrangement two other directors had notice, but of which neither the board of directors itself nor the other individual directors thereof had notice or knowledge, and where such compensation had not theretofore been authorized by the board nor thereafter ratified by it, the corporation can maintain an action to recover the money.

2. SAME—*Ratification of Contract by Board of Directors.* Ratification by a board of directors of a corporation implies that the board had notice or knowledge of the matters in need of such ratification, and where such matters concern the interrelationship of the officers and board of directors of the corporation, the board cannot be adjudged to have ratified a matter of which it had no knowledge, actual or constructive, following *National Bank v. Drake,* 29 Kan. 311, syl. ¶ 4; and the fact that the matter involved was known to three individual members of a board of seven directors is insufficient to form a basis for such ratification, following *National Bank v. Drake,* 35 Kan. 564, 11 Pac. 445.

3. SAME. A secretary-treasurer of a corporation who was also a director thereof is not entitled to compensation for services performed by him in an official capacity or as incidental to his office unless such compensation has been agreed upon or its payment authorized by the board of directors.

4. SAME—*The Burden of Proof Was on Defendant to Show That He Was Entitled to Compensation While a Director.* Where a defendant in an action to recover moneys of a corporation had and received by him admitted that he was a director of the corporation, admitted that he was its secretary-treasurer and in charge of its funds, and admitted having received the money, but defended on the ground that the money was received by him as an official salary and as compensation for special services performed, the burden of proof was on defendant to prove that he had a valid contract for compensation, or that the services were unusual and performed with knowledge of the board of directors, under such circumstances that an obligation to pay compensation was fairly to be implied.

5. SAME—*A Directed Verdict Against Defendant was Proper.* The evidence examined, and held insufficient to support any defense to plaintiff's action, and that plaintiff's motion for a directed verdict and for judgment was properly sustained.

Appeal from Butler district court, division No. 2; GEORGE J. BENSON, judge. Opinion filed January 10, 1925. Affirmed.

*Charles W. Steiger,* of El Dorado, *Robert C. Foulston, A. M. Ebright, George Siefkin,* and *Sidney L. Foulston,* all of Wichita, for the appellant.

*Chester I. Long, J. D. Houston, A. M. Cowan, Claude I. Depew,* all of Wichita, *A. L. L. Hamilton, R. C. Woodward,* and *H. Pauline Woodward,* all of El Dorado, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover $600 irregularly received as salary by defendant at the close of his term of office as secretary-treasurer of the plaintiff corporation.

Plaintiff alleged that during the year 1922-'23 defendant was a director of the plaintiff corporation and also served as its secretary-treasurer; that prior to the incumbency of defendant the salary fixed by order of the board of directors for the secretary-treasurer had been $50 per annum, but on the last day of defendant's term of office he had procured one Jessen, the plaintiff's manager, whose term of office was also expiring on the same date, to issue to defendant, without authority from the board of directors, a voucher for $600, which was paid out of funds in defendant's own hands, the funds of the corporation being kept on deposit in a bank of which defendant was cashier.

Defendant answered with a general denial, certain admissions and allegations:

"*Third.* Defendant further admits that he was from the 18th day of February, 1922, to the 17th day of February, 1923, a director and officer of said corporation, as alleged and set forth in plaintiff's amended petition.

"*Fourth.* Defendant, further answering, states that he performed certain services as secretary and treasurer of the plaintiff corporation, at the request of the majority of the stockholders of said corporation and with the full knowledge and consent thereof and with the distinct understanding that his compensation for the period aforesaid should be the sum of six hundred ($600) dollars; that said service was performed with full knowledge and consent of the board of directors of said corporation, and that said service was accepted by them."

The trial court ruled that the burden of proof was on defendant. The evidence developed the fact that the corporation had seven directors, one of whom was defendant; that the president of the corporation knew nothing of any agreement to pay $600 per annum, or $50 per month, to defendant for his services; that the board of directors had not authorized the payment of the $600 salary, nor as

a board did the directors know of any arrangement to pay defendant such sum, although two of the directors, Ross and North, knew personally that one J. W. Scott, owner of a majority of the corporate stock, and who was also a director, had individually agreed with defendant that he should be paid $50 per month for his services. Defendant testified:

"He [Mr. Scott] said if I would help him and take hold and act as secretary and treasurer for the next year, he would give me a salary of fifty dollars a month. . . .

"Q. There seems to be some criticism as to why you took the money out the last day to pay for your services. You may explain that to the jury, Mr. Cory. A. The company was in debt between $2,900 and $3,000 at the time we took charge. During the year we suspended the dividends which had been previously paid. The company was paying eight per cent for this indebtedness, without very much reserve. We decided at our meeting that the policy of the company would be to suspend the dividends until after paying the debts and we had a reserve created. We paid off the indebtedness during the year, interest and all, around $3,100 or $3,200. . . .

"The policy of the company was changed; as fast as we could get the money together we paid the company's debts and saved the interest. I asked for no interest on my salary when I collected it at the end of the year. I was not present at the stockholders' meeting in 1923, I lost my position about that time. I was elected a director at the stockholders' meeting and also secretary and treasurer. I was not a stockholder when I was elected secretary and treasurer, but I bought twenty-five shares of stock afterwards. I do not remember the date, but it was some time later on, possibly a month or so later. I remained a director throughout the year, until some one else was elected a director in my place. As a director I did not receive any compensation."

A demurrer to defendant's evidence was sustained and plaintiff's motion for an instructed verdict and for judgment for $550 and interest was allowed, plaintiff having remitted $50 from the amount claimed in its petition.

Defendant assigns various errors, contending first that there was a binding contract of employment between the plaintiff corporation and defendant, because "the other directors [knew] what his contract and agreement with Scott was" prior to his election as secretary and treasurer. The record shows that only Director Ross knew anything of the agreement between Director Scott and defendant prior to defendant's election as secretary-treasurer, and that one other director, Doctor North, learned of it afterwards. North testified on behalf of defendant:

"Mr. Scott told me that he had made arrangements with Mr. Cory to assume the management and control of the company. He said Mr. Cory had agreed to take the secretaryship and treasurer, and that is about all I can re-

member. He did not say what Mr. Cory was to receive or what service he was to perform. I afterwards learned what the arrangement was. I understood we were to pay him fifty dollars a month. Mr. Cory continued to serve after I found out that he was to receive fifty dollars a month. That was satisfactory to me as a director."

But the board of directors knew nothing of such arrangement, nor indeed was there any evidence that the other individual directors knew of it, so all argument based on the law of ratification of unauthorized acts is beside the point. (*National Bank v. Drake,* 29 Kan. 311; 14 C. J. 145, 374, *et seq.;* see, also, *National Bank v. Drake,* 35 Kan. 564, 11 Pac. 445.)

It is next urged that the services which defendant did perform were unusual and outside of the usual scope of the duties of a secretary-treasurer of such a corporation, under circumstances authorizing an inference that he was to be paid therefor. Defendant's answer did not plead any unusual services, and there was no evidence that he rendered services unusual to the office of secretary-treasurer. Scott, indeed, did testify that he and defendant had agreed that defendant "should perform services outside the technical duties of secretary and generally look after the affairs of the company . . . the general supervision of the affairs of the company were, during the year 1922, entrusted to Mr. Cory." But there was no evidence to show that such services were performed; nor did it appear that Mr. Cory did, in fact, exercise general supervision over the affairs of the corporation during the year 1922. The corporation had a president, a board of directors, and a manager. So far as the record shows, these officials performed the usual functions attaching to their corporate offices, and that fact, of course, precludes the possibility that their supervisory powers could have been exercised by defendant. Certainly no unusual service, no exercise of supervisory power over the corporate affairs by defendant, was brought to the knowledge of the board of directors. In *Trust Co. v. Robinson,* 89 Kan. 842, 132 Pac. 979, it was said:

"It is well settled that an officer of a corporation is not entitled to compensation for services rendered by him in an official capacity or as incidental to the office unless such compensation has been agreed upon or its payment authorized in advance by the board of directors. No agreement was made with the appellant that compensation for his services in this respect should be made, nor was payment authorized by the governing authority of the company, either before or after the rendering of the services. In *National Bank v. Drake,* 29 Kan. 311, 44 Am. Rep. 646, this rule was announced by the court, and then it went further and held that it was not within the power of the directors to pay for such services after they had been performed unless there

was a previous agreement between the company and the officers that compensation should be made." (p. 844.)

The case of *St. L. Ft. S. & W. Rld. Co. v. Tiernan,* 37 Kan. 606, 15 Pac. 544, is not at variance with the general rule. It was there held that a president and general manager of a railroad in its formative stages who served without compensation might thereafter be awarded reasonable compensation by the board of directors, where there had been a prior understanding that such compensation would be paid if and when the corporation grew to be a financial success, but that is a very different proposition from claiming a right to take compensation from the corporation without the sanction of its board of directors. In *National Bank v. Drake,* supra, the syllabus reads:

"The doctrine that the directors of a bank are conclusively presumed to know the financial condition of the bank, its general business, and its receipts and expenditures, as shown by its regular books, is for the protection of third parties dealing with the bank, and of the bank against the prejudicial action of any directors, and cannot be invoked to uphold a wrongful appropriation of moneys by the cashier or other officer, which appropriation is made and also entered upon the books of the bank without the actual knowledge of the directors." (¶ 5.) See, also, extended note to *Althouse v. Cobaugh Colliery Co.,* 227 Pa. 580, in 136 A. S. R. 909-925; also note to *Goodin v. Cement Co.,* 79 W. Va. 83, in L. R. A. 1917 F, 310, *et seq.*)

Another error is urged in imposing the burden of proof on defendant. Since defendant's answer admitted that he was a director and secretary-treasurer of the corporation, and admitted that he received the money, of course the burden was on him to prove a valid contract for compensation, either by resolution of the board of directors, or knowledge of the board of the arrangement between defendant and Director Scott and ratification thereof by the board of directors, or by notice to the board and its acquiescence therein. There was no error on this point. (*National Bank v. Drake,* supra; *Trust Co. v. Robinson,* supra.)

Defendant's fourth assignment of error—taking the case from the jury—is argued on the hypothesis that there was some evidence of acquiescence and ratification by the board of directors, and that defendant performed extraordinary services of which the board of directors had knowledge, but as we have seen there was no such evidence, so there was no issuable fact for a jury to determine, and an instructed verdict was proper.

Judgment affirmed.