STATE EX REL. SHINNERS, Sheriff, Plaintiff in error, vs. GROSSMAN, Defendant in error.
SAME, Plaintiff in error, vs. LEWIS, Defendant in error.

*October 13—November 7, 1933.*

For the plaintiff in error there were briefs by the *Attorney General, William A. Zabel,* district attorney of Milwaukee county, *Fred M. Wylie,* deputy district attorney, and *Edward J. Yockey,* special assistant district attorney, and oral argument by *Mr. Wylie.*

For the defendant in error Grossman there was a brief by *Lines, Spooner & Quarles,* attorneys, and *Louis Quarles, Malcolm K. Whyte,* and *Maxwell H. Herriott* of counsel, all of Milwaukee, and oral argument by *Mr. Quarles, Mr. Whyte,* and *Mr. Herriott.*

For the defendant in error Lewis there was a brief by *Fish, Marshutz & Hoffman,* attorneys, and *I. A. Fish, G. R. Hoffman,* and *W. H. Voss* of counsel, all of Milwaukee, and oral argument by *Mr. Fish* and *Mr. Hoffman.*

OWEN, J. Defendant in error Michael H. Grossman was president and director of the Bank of Shorewood. Defendant in error John Parish Lewis was vice-president and director of the same bank. A grand jury of Milwaukee county indicted each of them upon several similar counts, claimed to constitute offenses under sec. 221.40, Stats., which reads as follows:

"Any officer, director, agent or employee of any bank, or mutual savings bank, who shall for himself, directly or indirectly, take, accept or receive, or offer or agree to take, accept or receive, any commission, fee, compensation, or thing of value whatever, from any person in consideration of the bank, or mutual savings bank, of which he is such officer, director, agent or employee, loaning any money to, buying or discounting any note, bond, draft, or bill of exchange from, or accepting any draft for, or issuing any let-

ter of credit to, such person, shall upon conviction thereof be imprisoned in the state prison not to exceed two years."

The facts set forth in the indictment, which it is claimed constitute a violation of sec. 221.40, may be summarized as follows : Each defendant in error owned approximately one-third of the capital stock and beneficial interest of Grossman, Lewis & Company, a corporation engaged in the sale of investment securities, hereinafter referred to as the investment company. Each of them "held a contract with the said Grossman, Lewis & Company and with two other persons with similar ownership and interest therein, whereby he, the said Grossman, not only received a substantial salary, based principally upon business-producing capacity, but whereby a partnership agreement existed, between the said Grossman and said others, in the operation and net profits of the said corporation, Grossman, Lewis & Company, and whereby each of the said Grossman and the said others was entitled to and became the owner of one-third of the said net profits ;" that upon certain dates mentioned in the various counts, said defendants in error, severally acting for the investment company in making the sale, and for the bank in making the purchase, sold bonds, belonging to the investment company, to the bank, upon which the investment company made a profit, and that by reason of such transactions the said defendants in error each did for himself "take, accept, and receive and offered and agreed to take, accept, and receive from the said Grossman, Lewis & Company, by virtue of his stock and interest therein and his contract therewith and with the other partners, a substantial interest in a portion of the said profits in consideration of the said bank purchasing the said bonds."

The question presented is whether the receiving and accepting of the moneys paid by the investment company to the defendants in error as compensation for their services rendered to the investment company, or in the nature of

profits or dividends paid to them by the investment company, constitutes a violation of sec. 221.40, Stats. A most cursory consideration of this section makes it plain that it penalizes the acceptance by an officer of a bank of anything of value whatever, either directly or indirectly, in consideration of the bank, among other things, buying any bonds from the person so giving the thing of value. In terse language it makes criminal the receiving of bribes on the part of bank officials. This is conduct which is inherently immoral and corrupt, and none will deny the propriety of visiting criminal penalties upon such conduct. The civil rules of law have always condemned such transactions as a breach of trust on the part of the agent to his principal, vesting in the principal the right to recover the amount of the bribe from his faithless agent or, at his option, to rescind the contract entirely. *Weinhagen v. Hayes,* 174 Wis. 233, 178 N. W. 780, 183 N. W. 162, 187 N. W. 756; 2 Mechem, Agency, § 2137.

However, contracts between two corporations having identical officers or boards of directors have not been treated with such summary condemnation. It has always been the law that corporations, even though having identical officers or boards of directors, may deal with each other, and that contracts made between them are not void by reason of the simple circumstance of identical officers or boards of directors. The most that has been said of such contracts is that they will be vigorously scrutinized by the courts for the purpose of ascertaining whether either of the corporations to the transaction has been imposed upon, and, if such imposition appears, to permit and enforce the rescission of such contract on the part of the suffering corporation. Such contracts are voidable and not void. *Bergenthal v. Boynton A. L. Co.* 179 Wis. 42, 190 N. W. 901; *Trustees Onalaska Camp v. Onalaska M. W. H. Asso.* 179 Wis. 486, 192 N. W. 33; 14 A Corp. Jur. p. 125, § 9; 2 Thompson, Corporations, § 1241 *et seq.* The law has always permitted corporations possessing the same officers or management to contract with

each other. Such transactions are not inherently immoral or corrupt. They are quite common in the business world and, probably, it cannot be said that such class of transactions gives rise to a greater percentage of litigation than many others. Our statute which permits one corporation to hold stock in another, and to practically control its management, may be said to be an encouragement of the practice.

It goes without saying that one rendering services to another is entitled to compensation for such services, and that the stockholder of a corporation is entitled to his due proportion of the earnings paid out as dividends by that corporation. The things of value which came to the defendants in error by reason of the transactions disclosed in the various counts of the indictment, came to them either as compensation for services rendered to the investment company, or as their due proportion of the profits paid by the investment company to its stockholders. Their right to receive these sums is not inconsistent with any standard of morals, but, on the other hand, is sanctioned by established custom and usage. In order to constitute the receipt of these sums a violation of sec. 221.40, it must appear that they were paid to them for the purpose of influencing their judgment while acting on behalf of the bank in purchasing the bonds. However, the language of the indictment clearly states that they were paid to them by the investment company as compensation for services rendered to the investment company or as a proportionate return upon their investment in that company. All sums so received came to them as a result of the usual course of business of the investment company. If they took no advantage of the bank, the contracts which they negotiated between the investment company and the bank were valid. If on the other hand they took advantage of the bank and sold to the bank securities for more than they were worth, the transaction was voidable at the option of the bank, and the bank could return the securities and recover the money so paid. The point is that the transactions were not

inherently immoral or corrupt. It may be agreed that it is well within the scope of legislative power to prohibit such contracts. The question is whether the legislature so intended by the enactment of sec. 221.40.

The state vigorously contends that the moneys which accrued to the defendants in error by reason of the sale of bonds by the investment company to the bank, constitute a thing of value which they received indirectly in consideration of the bank buying the bonds. We see that this language very naturally and plainly lends itself to making criminal a class of transactions which have always been frowned upon and condemned by the courts. To attempt to construe this language as also applying to the transactions here under consideration is to impute to the legislature, by the use of casual and cursory language, an attempt to criminally penalize transactions which have never been considered to merit legal ostracism. This is a criminal statute, and while criminal statutes, like any other, should be liberally construed to effect the obvious legislative purpose, they should be strictly construed to exclude from their penalties those acts which are not clearly within the legislative purpose. We think that if the legislature had intended to make criminal the receipt by the defendants in error of moneys paid to them, or either of them, by the investment company in compensation for services rendered to the investment company, or moneys distributed to them as return upon their investment in the company, merely because such compensation for services or return upon their investment was augmented by reason of perfectly legitimate transactions between the investment company and the bank, except for this statute, such legislative purpose would have been revealed by more direct and specific language.

It is not our purpose to approve or attempt to hallow that class of practices here under consideration. Whether they should or should not be permitted is not for us to deter-

mine. That question is a legislative one. Our only effort has been to faithfully construe this statute. Whatever we may think of the practices, we cannot believe that the legislature intended to make them criminal by the statute under consideration. It follows that the defendants in error were properly discharged.

*By the Court.*—Judgments affirmed.