GAUGER, Plaintiff, vs. HINTZ and others, Defendants.
[Two appeals.] *

*October 7—November 5, 1952.*

* Motion for rehearing denied, with $25 costs, on January 6, 1953.

338

*Alvin Juedes* of Milwaukee, for the plaintiff.

For the defendants there were briefs by *Whyte, Hirschboeck & Minahan,* attorneys, and *Victor M. Harding* of counsel, and oral argument by *Mr. Harding* and *Mr. Raymond E. Gieringer,* all of Milwaukee.

FAIRCHILD, J. Directors are selected by those interested in a corporation to manage the affairs and property of the corporation for its benefit. In corporate management the directors have a wide discretion as long as it is honestly exercised. The meeting by the officers of a corporation of reasonable requirements of business management is recognized as lawful and is to be protected when the efforts are free from corrupt agreements and when there is no action so patently harmful to the corporation as to indicate an abuse of discretion. There is no rule of law which requires a director to act as an employee of the corporation without reasonable compensation for his services in its management. In the

absence of evidence tending to show overreaching, fraud, and unreasonableness in the matter of fixing a salary for a particular job, a court ought not substitute its judgment for that of the board of directors and assume to appraise the wisdom of any corporate action. We treated with this point and held, speaking by Mr. Justice WICKHEM, in *Steven v. Hale-Haas Corp.* (1946), 249 Wis. 205, 221, 23 N. W. (2d) 620, 23 N. W. (2d) 768, that "the business of a corporation is committed to its officers and directors, and if their actions are consistent with the exercise of honest discretion, the management of the corporation cannot be assumed by the court." See also *Thauer v. Gaebler* (1930), 202 Wis. 296, 232 N. W. 561.

The counsel for respondent, with great diligence, has recited cases which have, in accordance with general principles, held that directors of a corporation occupy a fiduciary relationship to it, among which are: *In re Taylor Orphan Asylum* (1875), 36 Wis. 534; *Cook v. Berlin Woolen Mill Co.* (1877), 43 Wis. 433, 439; *Boyd v. Mutual Fire Asso.* (1903), 116 Wis. 155, 181, 90 N. W. 1086, 94 N. W. 171; and *Koelbel v. Tecktonius* (1938), 228 Wis. 317, 321, 280 N. W. 305. With the doctrine of those cases as applied to the facts involved therein we agree.

Nevertheless, something besides the fact that the individual was a director must be existent to destroy or overcome the accepted doctrine that "the laborer is worthy of his hire." Under such circumstances transactions should be subject to close and searching scrutiny, but if such examination discloses that the compensation arranged for is reasonable and not based on fraud or bad faith, it would be grievous injustice, and not required by legal precedent, for the court to deny the individuals the right to receive or retain compensation reasonably and honestly earned in return for services by which the corporation and necessarily its stockholders were benefited.

In the case at bar, the trial court found, in effect, that a reasonable annual aggregate compensation for the four defendant executives of the Milwaukee Machine Products Company (hereinafter referred to as the "corporation"), for the years 1941–1951, inclusive, was $33,465 per year, and anything paid in excess thereof was excessive and unreasonable. By applying this yardstick, he determined that the defendants had withdrawn in excessive salaries during such period the sum of $132,440, and that $98,321.13 of such sum had been invested by the defendants in the Milmac Corporation (hereinafter referred to as "Milmac"), and the remaining $34,118.87 had been converted by the defendants to their own use. By the judgment, the trial court required the assets of Milmac to be conveyed to the corporation, and required the defendants to pay to the corporation the sum of $34,118.87 representing such balance of the alleged excessive salaries not invested by the defendants in Milmac.

All salaries or wages paid to the four defendants during the eleven-year period from 1941 to 1951, inclusive, were, on the average, well within the $15,000 limit of the resolution appearing in the minutes of the special directors' meeting of November 15, 1941, set forth in the statement of facts preceding this opinion. The minutes do not state that the resolution was carried or voted upon but merely that the defendant Hintz moved its adoption, and that such motion was seconded by the defendant Wandel. The trial court specifically found with respect thereto:

"That no vote was taken upon said motion. It therefore did not carry and remained a nullity and of no force and effect."

The four defendants at that time constituted the board of directors, and all had an interest in the resolution fixing their compensation. See *Stoiber v. Miller Brewing Co.* (1950), 257 Wis. 13, 42 N. W. (2d) 144, and annotation entitled, "Corporate Director-Fixing Own Pay," 175 A. L. R. 577.

However, the fact that there was no valid directors' resolution or contract in existence authorizing the increased compensation drawn by these defendants does not mean that they are not entitled to pay for the services rendered by them. Such services were not rendered by them in performing the duties of directors and officers, but rather in the capacity of skilled executives in operating a large and thriving business. The applicable principle of law is well stated by the author of the annotation in 175 A. L. R. 577, 600, as follows:

"The fact that a corporate director participates in a vote or a meeting fixing or increasing compensation for his services not incident to his duties as director does not necessarily mean that he cannot recover for such services. Although the resolution fixing or increasing his salary may be invalid because of his participation in the vote or meeting at which the resolution is passed, if he performs services for the corporation not incident to his duties as director, he will be entitled to a reasonable compensation for the services actually rendered."

In other words, there being no valid contract providing for payment for such services, the defendants are entitled to reasonable compensation therefor on the theory of implied contract. However, the burden of proof in establishing the reasonable value of such services is upon the defendants. 13 Am. Jur., Corporations, p. 985, sec. 1039; 5 Fletcher, Cyc. Corp. (perm. ed.), p. 661, sec. 2181; 7 Minnesota Law Review, 347; *O'Leary v. Seemann* (1925), 76 Colo. 335, 232 Pac. 667; *Whitewater Tel. Co. v. Cory* (1925), 117 Kan. 463, 232 Pac. 609; *Francis v. Brigham-Hopkins Co.* (1908), 108 Md. 233, 70 Atl. 95; *Riddle v. Mary A. Riddle Co.* (1948), 142 N. J. Eq. 147, 59 Atl. (2d) 599.

The record contains no evidence to sustain the learned trial court's finding that any payment of compensation in excess of $33,465 per year in the aggregate for the years 1941 to 1951, inclusive, to the four defendants was unrea-

sonable or excessive. The brief memorandum opinion of the trial court does not disclose what he based such finding upon. We must assume therefore that this is the conclusion of the trial court based upon his independent judgment. A finding as to the value of personal services so based upon the independent judgment of a trial court, be he ever so experienced, cannot stand against the evidence. *Will of Gudde* (1951), 260 Wis. 79, 49 N. W. (2d) 906; *Birkmire v. Campus Realty Corp.* (1928), 223 App. Div. 226, 227 N. Y. Supp. 653.

No evidence whatever was offered in behalf of plaintiff bearing upon the issue of the value of the services rendered to the corporation by the defendants, and the only evidence bearing upon that point is to be found in the testimony of the defendants.

Defendant Hintz testified that the four defendants were very much underpaid for their services from 1930 to 1940, because they were trying to build up the corporation's business to a point where it could pay them a salary commensurate with their work. Hintz further testified that he was at the time of trial working fifty hours per week, but that the defendants during the war period worked as many as seventy-five hours per week. He also stated that during the time the corporation had a RFC loan the Reconstruction Finance Corporation approved salaries of $13,000 per year to each of the defendants, and that the internal revenue bureau in auditing the corporation's federal income-tax returns up through 1947 had not disallowed any of the officers' salaries.

The defendant Wandel testified:

"The reason the salary of each officer is actually the same is because we considered ourselves alike, as far as ability is concerned and so forth. I think we were all worth it."

Defendant Gieringer's testimony bearing on the reasonableness of the salaries paid by the corporation to the defendants is as follows:

"All the officers of Milwaukee Machine Products Company received the same salary. We were not partners, we are a corporation. The salary was not the same because we owned the same number of shares. It was because of the time we put in there and the work. I think we were equal to get that."

The defendant Mueller, president of the corporation, gave no testimony on this issue, and the defendants called no other witnesses to establish the reasonableness of their salaries.

Meager as was this testimony of the defendants on this issue of the worth of their services rendered to the corporation, it is our conclusion that it does meet the burden of proof imposed on them to establish that the compensation received by them was reasonable in view of the complete absence of any evidence to the contrary, and that their effort was put forth in good faith to nurse the corporation and act for its best interest.

There is no evidence in the record to sustain any finding that the individual defendants did any of the acts charged against them in the complaint for the purpose of defrauding the plaintiff, and the findings of the trial court in that respect are against the great weight and clear preponderance of the evidence and cannot stand.

It is considered that there is no evidence to sustain a finding that the individual defendants' salaries were unreasonable or excessive, but that what evidence there is in the record on this point sustains the reasonableness of such salaries. It necessarily follows that the moneys derived from such salaries used by these defendants in acquiring the capital stock of Milmac constituted their own funds, belonged to them, and were not the property of the corporation. Therefore, the actions of the individual defendants with respect to Milmac present these two questions:

(1) Was it improper for the defendants to organize Milmac and have it acquire the lands and construct the new factory building for the use of the corporation, instead of having the corporation do it?

(2) Should the individual defendants be required to account to the corporation for any profits they may have realized out of the operations of Milmac?

Counsel for plaintiff contends that the doctrine of "corporate opportunity" applies to the action of the individual defendants in using Milmac as a vehicle to acquire for themselves the lands and new factory building erected thereon; and that under such doctrine the assets of Milmac should be impressed with a trust in favor of the corporation. This doctrine of "corporate opportunity" is set forth in 3 Fletcher, Cyc. Corp. (perm. ed.), p. 224, sec. 861.1:

"The doctrine of 'corporate opportunity' is nothing new to the law. It is but one phase of the cardinal rule of 'undivided loyalty' on the part of fiduciaries. In other words, one who occupies a fiduciary relationship to a corporation may not acquire, in opposition to the corporation, property in which the corporation has an interest or tangible expectancy or which is essential to its existence. This corporate right or expectancy, this mandate upon directors to act for the corporation, may arise from various circumstances; such as, for example, the fact that directors had undertaken to negotiate in the field on behalf of the corporation, or that the corporation was in need of the particular business opportunity to the knowledge of the directors, or that the business opportunity was seized and developed at the expense, and with the facilities of the corporation. So, it has been said that a director cannot be allowed to profit personally by acquiring property that he knows the corporation will need or intends to acquire, and that this interest, actual or in expectancy, must have existed while the person involved was a director or officer. . . .

"If it is the duty of officers in a particular case to enter into a contract, or to purchase or take a transfer of property, on behalf of the corporation, and, in violation of this duty,

they enter into the contract or acquire the property personally, they will not be permitted to retain the benefit, but will be held as trustees for the corporation."

This same principle is stated in *Blaustein v. Pan American Petroleum & Transport Co.* (1941), 263 App. Div. 97, 125, 31 N. Y. Supp. (2d) 934, as follows:

"One who occupies a fiduciary relationship to a corporation may not acquire, in opposition to the corporation, property in which the corporation has an interest or tangible expectancy or which is essential to its existence."

For further authorities on the doctrine of "corporate opportunity" see notes in 31 California Law Review, 188; 39 Columbia Law Review, 219; and 30 Marquette Law Review, 117.

However, there are certain limitations and exceptions to the rule of "corporate opportunity." 3 Fletcher, Cyc. Corp. (perm. ed.), p. 229, sec. 862, states these limitations as follows:

"A finding of 'corporate opportunity' will be denied wherever the fundamental fact of good faith is determined in favor of the director or officer charged with usurping the corporate opportunity, or where the company is unable to avail itself of the opportunity, or where availing itself of the opportunity is not essential to the company's business, or where the accused fiduciary does not exploit the opportunity by the employment of his company's resources, or where by embracing the opportunity personally the director or officer is not brought into direct competition with his company and its business."

In *Bump Pump Co. v. Waukesha Foundry Co.* (1941), 238 Wis. 643, 300 N. W. 500, this court applied the exception of good faith as one of the grounds in relieving the defendants from the doctrine of "corporate opportunity" which the plaintiffs sought to invoke against them.

The testimony in the instant case establishes that the corporation did not have the liquid funds available for the pur-

pose of erecting a new plant. Its funds were already over-taxed in buying new machines and increasing inventory to meet the tremendously increased volume of production which it was experiencing. The defendants might have borrowed the money, but they were opposed to going in debt. They had weathered the depression largely because they had kept clear of bank loans and mortgages. Besides, they were machinists and craftsmen, not financial experts, and they were suspicious of large debts in any form. In forming a business judgment, those responsible for developing a plan may act on facts existing at the time with reasonable consideration of future prospects. And viewing the matter through defendants' eyes in 1942 the principles of economy which they adhered to were reasonable.

Since the company could not expand its business and at the same time finance the construction of a new plant, the defendants decided that the only sound plan to accomplish the objective was to finance the new plant with money they received in salaries. Plaintiff contends that they should have kept their salaries at the 1940 level and that then the corporation could have financed the new building. He overlooks, of course, the very obvious limitations that would have existed. Federal income and excess-profits taxes would have consumed most of the corporation's net profit. If salaries did not keep pace with rising profits, the corporation's net profit would have been dissipated in taxes and no funds would be available for a building program. The same result would occur if salaries were kept at the 1940 level and any excess paid out in dividends. Before dividends could be paid, taxes would have to be met, and there would be little left for any building fund. From the standpoint of the corporation, therefore, the plaintiff's proposal is without practical advantage. What was saved on salaries would not remain in the corporate treasury for building purposes. But the proposal has the additional defect of suggesting that somehow it was the

defendants' duty to work for less than reasonable pay to allow the corporation to carry out a building program. Officers, directors, and employees may forego any part of their reasonable compensation for reasons which they deem satisfactory, but if they do so it is a matter of their own choice, and they are not derelict if they choose otherwise. There is no such duty.

The individual defendants, through Milmac, for nearly eight years charged the low rental of $500 per month. Then in the latter part of 1950 they had an independent appraisal made to determine a fair rental, and such independent appraiser arrived at a fair rental on two bases, one being what similar industrial property was renting for, and the other being a fair return upon replacement cost. On one basis the appraiser arrived at a rental of $1,200 per month, and on the other $1,300 per month. On the basis of this appraisal a new lease was entered into, effective January 1, 1951, for a rental of $1,000 per month.

It is considered that the foregoing facts establish that the defendants acted in entire good faith with respect to incorporating Milmac and in having that corporation acquire the new factory property.

The last point to be considered is whether the defendants are accountable to the corporation for any profits that Milmac may have realized out of the rentals charged the corporation. In order for the plaintiff to prevail as to this point, it would have to appear that the leasing arrangement between Milmac and the corporation was invalid on the ground that the individual defendants controlled the boards of directors and officers of both corporations, thereby enabling these defendants to make a profit at the expense of the corporation. The rule as to such showing is stated in 19 C. J. S., Corporations, p. 166, sec. 789:

"The mere fact that some, a majority, or all of the directors or contracting officers of two corporations are common

to both, does not render a contract between such corporations void; it is merely voidable for fraud or unfairness, and the burden is on those seeking to sustain the transaction to prove absence of fraud or unfairness."

This court, in *Roberts v. Saukville Canning Co.* (1947), 250 Wis. 112, 122, 26 N. W. (2d) 145, succinctly stated the same principle as follows:

"Contracts between corporations having identical officers are not void, but are voidable if either corporation has been imposed upon."

In *State ex rel. Shinners v. Grossman* (1933), 213 Wis. 135, 138, 250 N. W. 832, the court summed up the rule as follows:

"It has always been the law that corporations, even though having identical officers or boards of directors, may deal with each other, and that contracts made between them are not void by reason of the simple circumstance of identical officers or boards of directors. The most that has been said of such contracts is that they will be vigorously scrutinized by the courts for the purpose of ascertaining whether either of the corporations to the transaction has been imposed upon, and, if such imposition appears, to permit and enforce the rescission of such contract on the part of the suffering corporation. Such contracts are voidable and not void. *Bergenthal v. Boynton A. L. Co.* 179 Wis. 42, 190 N. W. 901; *Trustees Onalaska Camp v. Onalaska M. W. H. Asso.* 179 Wis. 486, 192 N. W. 33; 14A Corp. Jur., p. 125, sec. 9; 2 Thompson, Corporations, sec. 1241 *et seq.*"

The testimony in the instant case discloses that, far from imposing upon the corporation, the leasing arrangements with Milmac were in its (the corporation's) interest and very beneficial. Even the plaintiff in his testimony stated that he could not tell whether the rent paid was excessive and had "no feeling about that one way or the other." The defendants have amply proved that the dealings between the two corporations were not tainted by fraud or unfairness. In

this stockholder's suit, plaintiff stands in the shoes of the Milwaukee Machine Products Company, and, the leasing arrangements being valid, there is no basis for that corporation to recover any of the rentals paid Milmac, and any profits which the individual defendants may have realized from said rentals is immaterial. It is unnecessary to treat with other matters sought to be raised on this appeal.

*By the Court.*—Judgment reversed and cause remanded with directions to dismiss the complaint.