SUBURBAN MOTORS OF GRAFTON, INC., a
Wisconsin corporation, Plaintiff and Cross-
Appellant,

v.

Gordon B. FORESTER, as Personal
Representative of the Estate of John G. Lange,
Deceased, Defendant-Appellant and Cross-
Respondent,

Allen KNEPFEL, an individual, Interpleaded
Defendant-Respondent,

Wayne HOUPT, an individual, Interpleaded
Defendant and Cross-Appellant.

Court of Appeals

*No. 85–1918. Submitted on briefs July 16, 1986.—Decided
September 17, 1986.*

(Also reported in 396 N.W.2d 351.)

For the defendant-appellant and cross-respondent, the cause was submitted on the briefs of *James H. Morgan* of *Morgan Law Office*, of Cedarburg.

For the interpleaded defendant-respondent Allen Knepfel and the plaintiff and cross-appellant Suburban Motors of Grafton, Inc. and the interpleaded defendant and cross-appellant Wayne Houpt, the cause was sub-

mitted on the briefs of *F.M. Van Hecke* of *Van Hecke & Mank, S.C.* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   The estate of John G. Lange appeals from an order and judgment of the circuit court which imposed a constructive trust upon certain real estate owned by Lange's estate.

The order was premised upon the trial court's conclusion that Lange, as a member of the board of directors of Suburban Motors of Grafton, Inc. (Suburban), had breached his fiduciary duty to Suburban by failing to exercise a corporate opportunity; namely, Lange failed to exercise an option that he had granted to Suburban for the purchase of the real estate upon which Suburban conducted its motor vehicle dealership business. The order ran only to the benefit of Allen Knepfel, a former Suburban stockholder, who had previously been ordered joined as a party by the trial court on its own motion. The court concluded that, as between Knepfel and Wayne Houpt, the sole Suburban shareholder at the time of trial, Knepfel was the only party with clean hands and thus the only party entitled to relief.[1] We conclude the evidence in this case fails to

---

[1] The trial court reasoned that, since Houpt had acquired an "after-the-fact" 100% interest in Suburban, he personally should be charged with knowledge of Lange's actions.

The question of whether a cause of action under the doctrine of corporate opportunity is limited to the corporation rather than to the shareholders was not raised in the trial court and is not before us on appeal.

demonstrate a basis for relief under the doctrine of corporate opportunity. Therefore we reverse.[2]

The controlling facts as found by the trial court, or as otherwise established to be undisputed, reveal that Lange had owned and operated an automobile dealership on the site in question for a number of years prior to Suburban's incorporation. On March 15, 1967, Suburban was incorporated by the mutual efforts of Lange, Houpt and Knepfel. At the time of incorporation, 50% of the stock was owned by Lange, 25% by Houpt and 25% by Knepfel. On April 1, 1967, Suburban and Lange entered into separate option and lease agreements.[3] Under the lease, Lange leased the site of his former automobile dealership to Suburban for purposes of its new automobile dealership. The lease was to run for five years with a renewal clause for an additional five years terminating March 31, 1977. The option agreement, although executed in 1967, did not commence until April 1, 1972, and terminated on March 31, 1977. Suburban never exercised the option. Lange died on July 4, 1978. The option price of the property was $80,000. At the time of the expiration of the option, the value of the real estate had increased to $400,000.

Following Lange's death, Suburban purchased a portion of the property covered by the option from Lange's estate. In addition, Houpt purchased all of the Suburban stock previously owned by Lange from Lange's estate. Knepfel's Suburban stock was repurchased by the corporation. Thus, at the time of trial, Houpt was the sole owner of all issued Suburban stock.

---

[2] In light of this conclusion, we are not required to address the cross-appeal issues asserted by Suburban and Houpt.

[3] Lange's wife, Gladys, also was a party to the agreements.

Initially, Lange argues that Suburban's action fails because it was not commenced within the time limits fixed for filing claims in the probate action. Suburban argued, and the trial court agreed, that the doctrine of corporate opportunity sounds in tort. Section 859.01(1) and (3), Stats., provides that such tort claims are not barred by the statutory time limits for filing claims in an estate proceeding.[4] As to this issue, Lange, Suburban and the trial court are in error. The remedy provided as a result of the improper seizure by a fiduciary of a corporate opportunity is the imposition of a constructive trust upon the benefit obtained. *See Gauger v. Hintz*, 262 Wis. 333, 351-52, 55 N.W.2d 426, 435-36 (1952). A constructive trust is imposed by a court of equity to prevent unjust enrichment which arises when one party receives a benefit the retention of which would be unjust as against the other party. *First National Bank v. Nennig*, 92 Wis.2d 518, 539, 285 N.W.2d 614, 625 (1979). The timeliness of the commencement of actions at law is governed by statutes of limitations whereas equitable actions are governed by considerations of laches. *Elkhorn Area School District v. East Troy Community*

---

[4] Section 859.01(1) and (3), Stats., states:

Limitation on filing claims against decedent's estates. (1) Except as provided in sub. (3) and s. 859.03, all claims against a decedent's estate including claims of the state and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, are forever barred against the estate, the personal representative and the heirs and beneficiaries of the decedent unless filed with the court within the time for filing claims.

(3) This section does not bar claims based on tort, claims based on Wisconsin income, sales, withholding, gift, inheritance or estate taxes, claims for funeral expenses, claims for administration expenses or claims of the United States.

*School District*, 127 Wis.2d 25, 31–32, 377 N.W.2d 627, 630–31(Ct. App. 1985). Because it incorrectly concluded that Suburban's action was one at law in tort, the trial court did not address whether laches barred the action. This omission, however, is not fatal to this case because we nonetheless conclude that the evidence does not allow for application of the doctrine of corporate opportunity.

The trial court, invoking the doctrine of corporate opportunity, determined that Lange violated his fiduciary duty owed to the corporation by failing to exercise the option. The order imposed a constructive trust on that portion of the Lange property covered by the option agreement not previously conveyed by Lange's estate to Suburban. As previously noted, recovery was limited only to Knepfel and then only to the extent of the 25% ownership which he had previously held.

We first address our standard of review. We note that the issue here is not a question of the correctness of the trial court's factual determinations nor the sufficiency of the evidence to sustain those determinations. Rather, the issue on this appeal is whether the facts as determined by the trial court permit judgment for Knepfel. The issue raised by Lange is the equivalent of a motion for judgment notwithstanding the verdict in a jury case.[5] Such a motion does not raise the issue as to whether there is sufficient evidence to support the ver-

---

[5] Suburban does not complain that Lange did not bring a post-judgment motion raising this issue. Whether sec. 805.17(4), Stats., eliminates the need for such a motion is therefore not before us. We note that Lange did move for dismissal at the close of Suburban's case in chief contending that the evidence failed to establish a basis upon which relief could be granted.

dict; rather, it challenges whether the facts as found in the verdict are sufficient to permit recovery. *Herro v. D.N.R.*, 67 Wis.2d 407, 413, 227 N.W.2d 456, 462 (1975). The question of whether facts fulfill a particular legal standard is itself a question of law. *Eastman v. City of Madison*, 117 Wis.2d 106, 112, 342 N.W.2d 764, 767 (Ct. App. 1983). When reviewing a question of law, this court need not defer to the lower court's reasoning. *Kramer v. Horton*, 128 Wis.2d 404, 414, 383 N.W.2d 54, 58 (1986).

The seminal case from which the law of corporate opportunity springs is *Guth v. Loft, Inc.*, 5 A.2d 503 (Del. 1939). The doctrine was first pronounced in Wisconsin law in *Gauger v. Hintz* as follows:

> "The doctrine of 'corporate opportunity' is nothing new to the law. It is but one phase of the cardinal rule of 'undivided loyalty' on the part of fiduciaries. In other words, one who occupies a fiduciary relationship to a corporation may not acquire, in opposition to the corporation, property in which the corporation has an interest or tangible expectancy or which is essential to its existence. This corporate right or expectancy, this mandate upon directors to act for the corporation, may arise from various circumstances; such as, for example, the fact that directors had undertaken to negotiate in the field on behalf of the corporation, or that the corporation was in need of the particular business opportunity to the knowledge of the directors, or that the business opportunity was seized and developed at the expense, and with the facilities of the corporation. So, it has been said that a director cannot be allowed to profit personally by acquiring property that he knows the corporation will need or intends to acquire, and that this interest, actual or in expectancy, must have existed while the person involved was a director or officer . . . .

189

> "If it is the duty of officers in a particular case to enter into a contract, or to purchase or take a transfer of property, on behalf of the corporation, and, in violation of this duty, they enter into the contract or acquire the property personally, they will not be permitted to retain the benefit, but will be held as trustees for the corporation."

*Gauger*, 262 Wis. at 351–52, 55 N.W.2d at 435–36 (quoting 3 W. Fletcher, Cyclopedia of the Law of Private Corporations § 861.1 (rev. perm. ed. 1975)). Our research reveals no further Wisconsin case which has addressed or refined this theory.

From the very outset, the courts have had little difficulty articulating the corporate opportunity doctrine but have recognized the vagaries of its application. "The occasions for the determination of honesty, good faith and loyal conduct are many and varied, and no hard and fast rule can be formulated. The standard of loyalty is measured by no fixed scale." *Guth*, 5 A.2d at 510. *See also Miller v. Miller*, 222 N.W.2d 71, 78 (Minn. 1974).

We have searched in vain for a corporate opportunity case in which the opportunity to the corporation is occasioned by the action of the defendant fiduciary himself. It is this unique fact about the instant case, together with additional facts discussed below, which persuades us that the doctrine of corporate opportunity is not applicable here.

Lange himself granted to Suburban the opportunity to purchase the property in question pursuant to the option. Article III, section 1 of Suburban's bylaws confers upon the board of directors the general authority to manage the business and affairs of the corporation. The initial directors of Suburban were Lange, Knepfel,

Houpt, and Lange's wife, Gladys.[6] Article III, section 6 provides that a quorum for the transaction of business at any meeting of the board of directors consists of a majority of the directors then in office. Article III, section 7 of the bylaws provides that "[t]he act of the majority of the directors present at a meeting at which a quorum is present, shall be the act of the Board of Directors."

Lange served as president of Suburban from its inception until the date of his death in July 1978. Article IV, section 5 denominates the president as the principal executive officer of the corporation but subject to the control of the board of directors. Article II, section 1 of the bylaws provides that the annual meeting of the shareholders shall be at the call of the president, "and if he does not act, as the Directors shall determine."

Thus, although he held 50% of the outstanding shares, Lange was but one member of a four-person board of directors which could effectively act by majority vote of a quorum. Lange, as president, was subject to the control of directors.

We acknowledge that nonaction by a corporate fiduciary can, in appropriate circumstances, constitute diversion or usurpation of a corporate opportunity. However, we conclude that the doctrine was not intended to apply in a situation such as here where (1) the corporate opportunity is initially provided by the alleged offending fiduciary himself; (2) full disclosure of the opportunity and knowledge of its existence to the other directors and officers exists; and (3) corporate

---

[6] Mrs. Lange predeceased Mr. Lange but the record is uncertain as to her date of death. Houpt testified that he believed Mrs. Lange died in December 1977.

procedures are available to other directors and officers to exercise the corporate opportunity. All of these factors exist without dispute in this case.

Suburban and Knepfel argue that because Lange had exclusive control and custody of the corporate book, prepared or directed the preparation of all annual and special meeting minutes (and on one occasion misrepresented himself as secretary), *de facto* acted as president and secretary of the corporation, generally handled the corporate affairs, and ceased calling corporate meetings of shareholders in 1976, usurpation or diversion of the corporate opportunity to exercise the option is established. These arguments, however, do not refute that Houpt and Knepfel had full knowledge of the option and full opportunity to seek its exercise. Indeed, the trial court recognized as much with respect to Houpt by denying him relief on this very basis. We are at a loss to understand why the same reasoning does not apply to Knepfel. The mere fact that his stock holdings were of minority status does not undo the fact that knowledge and opportunity were present as to both Knepfel and Houpt and, thus, the corporation.

> [T]he general rule is well established that a corporation is charged with constructive knowledge, regardless of its actual knowledge, of all material facts of which its officer or agent receives notice or acquires knowledge while acting in the course of his employment within the scope of his authority, even though the officer or agent does not in fact communicate his knowledge to the corporation .... So notice to an agent of a corporation relating to any matter of which he has the management and control is notice to the corporation.
>
> This rule is generally based either upon the fiction of identity of principal and agent, or else upon

> the presumption that the agent has done his duty
> and communicated his knowledge to the corporation,
> the principal.

3 W. Fletcher, supra, at § 790 (footnotes omitted). Here, it is undisputed that both Knepfel and Houpt actively participated in the making of the lease agreement, initially approved it as members of the board of directors and had full knowledge and opportunity to seek its exercise on behalf of Suburban.

While the black letter rule of corporate opportunity is arguably broad enough to include the actions of Lange in this case, the evil necessitating the rule, namely a fiduciary diverting or usurping a corporate opportunity *without the corporation having the opportunity to first act,* is not present in this case.

> Courts have indicated that if the doctrine of business
> opportunity is to possess any vitality, the corpora-
> tion or association must be given the opportunity to
> decide, upon full disclosure of the pertinent facts,
> whether it wishes to enter into a business that is
> reasonably incident to its present or prospective
> operations.

*Id.* at § 861.1. We are satisfied based upon the facts as determined by the trial court that Suburban, properly charged with the knowledge of its agents, Houpt and Knepfel, had full knowledge of the option and full opportunity to seek its exercise. As such, the doctrine of corporate opportunity does not apply in this case.

We therefore reverse the order and judgment of the circuit court.[7]

---

[7] The other causes of action, upon which the trial court did not premise its order, included breach of fiduciary obligation, constructive trust and mismanagement. We have considered whether a

*By the Court.*—Order and judgment reversed.

remand for purposes of trial court consideration of Suburban's other causes of action is appropriate since the trial court did not address them in its decision. However, an examination of Suburban's brief submitted following the close of evidence and before the trial court's decision reveals that the other causes of action were alluded to only on the statute of limitations question. As to the substantive basis for recovery, Suburban narrowed its claim only to the doctrine of corporate opportunity. Knepfel is not prejudiced by our decision not to remand for consideration as to the remaining causes of action because he agreed that his interests were akin to those of Houpt and Suburban.