MORRIS, Appellant, vs. RESNICK, Executrix, Respondent.

*December 7, 1954—January 11, 1955.*

For the appellant there was a brief and oral argument by *D. V. W. Beckwith* of Madison.

For the respondent there was a brief and oral argument by *Lorin L. Kay* of Richland Center.

CURRIE, J.    Counsel for plaintiff contends on this appeal: (1) That the finding of the trial court that no partnership was created between plaintiff and Sarah Eskin, the deceased, is against the great weight and clear preponderance of the evidence; (2) that such determination was grounded upon an erroneous view of the law; and (3) if these contentions are decided adversely to plaintiff, then that the undisputed evidence requires that the value of the services rendered by the plaintiff for the deceased be fixed at a higher figure than the sum of $3,700 found by the trial court.

At the time of trial in 1953, plaintiff was forty-two years of age. He is a normal-school graduate and taught school for thirteen years. He built a small moving-picture theater in the village of Muscoda which he has operated since 1948, but which theater is not completely paid for. In addition to operating such theater he supplemented his income by painting farm buildings by means of a spray process. Desiring to establish and operate an outdoor motion-picture theater, he, without success, attempted to interest various persons to finance him in such a venture. Thereafter, in August, 1951, he contacted Sarah Eskin, who resided in the city of Richland Center, but plaintiff was prevented by the "dead man's statute" (sec. 325.16, Stats.) from testifying as to the conversation he then had with her, or as to any future transactions taking place between them. Sarah Eskin was over seventy years of age and could neither read nor write, except to sign her name. She had been divorced from her former husband and had received a substantial amount of property

as a property settlement or division. Included therein were two motion-picture theaters in Richland Center which Mrs. Eskin leased back to her divorced husband, and he continued to operate them.

Plaintiff's complaint alleged that on or about August 21, 1951, a partnership agreement was entered into between plaintiff and Sarah Eskin whereby the partners were to erect, own, and operate an outdoor motion-picture theater on U. S. Highway 14 near Richland Center; that Mrs. Eskin was to furnish the capital therefor and plaintiff was to supervise the acquisition of the land, the erection of the theater, and the installation of all necessary equipment, the plaintiff to own one third of the partnership property and Mrs. Eskin two thirds. The complaint further alleged that it was also agreed that a corporation would be ultimately organized to build and operate the theater and that plaintiff would own one third of the capital stock and Mrs. Eskin two thirds thereof.

However, at the trial it developed that no written agreement had been entered into between plaintiff and Mrs. Eskin, but plaintiff sought to prove the allegations of the complaint through circumstantial evidence which it is contended established a parol partnership agreement. We will now consider such evidence together with that adduced in behalf of defendant for the purpose of negativing the existence of a partnership.

Under date of August 28, 1954, a written option agreement was entered into by plaintiff and Mrs. Eskin with one Stadele, whereby the latter granted to the two first-mentioned persons the option to purchase 20 acres of land for $15,000. Construction of the outdoor theater was commenced almost immediately on such premises. It was later discovered that it would be desirable to have a wider frontage for an entranceway on U. S. Highway 14 than such 20 acres provided. To secure this, a lease of additional land abutting on such high-

way was entered into on September 17, 1951, between one. Jewell, as. lessor, and Mrs. Eskin and plaintiff, as lessees. Neither the option nor the lease stated what the respective interests of plaintiff and Mrs. Eskin were under either instrument. Under date, of September 24, 1951, Stadele conveyed the optioned 20 acres by warranty deed to Mrs. Eskin, she paying the entire $15,000 purchase price. Stadele testified that she requested that he not divulge to plaintiff that the premises had been conveyed to her as sole grantee. However, we deem it to have been extremely unlikely that plaintiff did not know long before the outdoor theater was completed that title to the land on which it was situated had been taken in the sole name of Mrs. Eskin.

Plaintiff called a number of witnesses who testified that Mrs. Eskin had stated to them, or in their presence, that she and the plaintiff were partners. To some of these witnesses she had stated that plaintiff was a one-third partner, or owner, and she a two-thirds partner, or owner. Mrs. Morris, wife of the plaintiff, testified that she heard Mrs. Eskin state that she was to furnish all of the capital, plaintiff to furnish his work and supervision, and that Mrs. Eskin was to be a two-thirds owner and plaintiff a one-third owner. On the other hand, several witnesses testified that Mrs. Eskin had stated that plaintiff was to have a one-third interest in the partnership, or the corporation to be formed later, *after she had been repaid the money she had invested in the venture.*

It is undisputed that plaintiff did supervise the construction of the outdoor theater, and did some work about the premises himself. Plaintiff testified he also built the marquee in the basement of his home at Muscoda. A so-called "package deal" was entered into with a theater-equipment company whereby most of the equipment needed in the erection of the outdoor theater, including the blueprints and specifications for erecting and equipping the theater, was purchased. Plaintiff was not named in said contract as a party thereto

and the same was signed by Mrs. Eskin alone although Morris was present at the negotiations leading up to the signing of the same. Vogel, the representative of the theater-supply company, was one of the witnesses to whom Mrs. Eskin had stated that plaintiff and she were partners.

This same Vogel, a witness for plaintiff at the trial, also prepared the application to the United States department of commerce for a construction permit. This was made out in the sole name of plaintiff as applicant, and signed by plaintiff as "partner." However, this document was never seen by Mrs. Eskin.

The outdoor theater was completed and opened for business on May 16, 1952. Plaintiff was then employed as manager of the theater at a salary of $100 per week. This salary was paid to him weekly by checks which he wrote out, but which were signed only by Mrs. Eskin. Plaintiff negotiated several contracts for the furnishing of motion pictures to be shown in the outdoor theater and these contracts were made out in the name of "Eskin and Morris" and signed by plaintiff as partner, but there is no testimony that Mrs. Eskin ever saw any of these contracts.

Mrs. Eskin apparently became dissatisfied with plaintiff's management of the outdoor theater and under date of July 1, 1952, she wrote him terminating his employment as of July 6, 1952. Then, on November 17, 1952, plaintiff commenced the within action against Mrs. Eskin. Mrs. Eskin died before trial and her daughter, Dorothy Resnick, executrix of her estate, was then substituted as party defendant.

The plaintiff signed and filed state income-tax returns for the years 1951 and 1952, each of which contained the question, "If you are a member of a partnership, give its name and address," and plaintiff failed to answer such question on the line in the blank provided for such purpose.

The burden of proof to establish a partnership, and the terms thereof, was on the plaintiff.

There was no co-ownership of the assets of the theater, excluding the lease to the small extra piece of land rented from Jewell. Title to the land stood in the sole name of Mrs. Eskin. Likewise, title to the equipment installed on the land to erect and equip the outdoor theater was in her name by reason of the fact that the contract under which the same was bought named her as sole purchaser. She paid the entire cost of the theater which aggregated in excess of $79,000, including the purchase price of the land.

The fact that the original option entered into with Stadele, and the Jewell lease, both named plaintiff and Mrs. Eskin as parties thereto, has some probative value in supporting plaintiff's claim as to the existence of a partnership, but is far from being conclusive on this issue. Sec. 123.04 (2), Stats., of the Wisconsin Uniform Partnership Act, provides:

"Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property."

The application for the construction permit, and the contracts for motion pictures, which named plaintiff as a partner, were never seen by Mrs. Eskin, and may well be regarded as self-serving documents prepared at the instigation of plaintiff.

The various verbal statements attributed to Mrs. Eskin, with the possible exception of that testified to by plaintiff's wife, do not disclose that there had been any meeting of the minds between Mrs. Eskin and plaintiff upon the essential terms necessary to establish a partnership. The statements made by Mrs. Eskin, that plaintiff was to receive his one-third interest in the outdoor theater when she had been paid back the money she had invested therein, is very significant as indicating that the terms of the proposed partnership were yet to be agreed upon by the parties. The failure of plaintiff

to answer the question in his state income-tax returns, which answer was required if he were a member of a partnership, is also consistent with this view that the partnership was something to be worked out in the future between the parties.

As pointed out in the memorandum opinion of the learned trial court, when Mrs. Eskin referred to plaintiff as her "partner" she may well have meant thereby merely that plaintiff was her business associate.

The trial court had discretion to disregard the testimony of plaintiff's wife, that she heard Mrs. Eskin state that plaintiff was to receive a one-third interest in the outdoor theater for his services in supervising the construction, as being incredible because of being contrary to the reasonable probabilities. The highest value which any witness placed upon such services of plaintiff was the estimate of $7,000 to $10,000 of the witness Vogel, who seemed to go out of his way throughout his testimony to favor plaintiff. The value of such services necessarily would have to be included in the capital cost of the theater, and, accepting Vogel's estimate of value, would increase the total cost from $79,000 to $86,000–$89,000. In other words, viewing the matter most favorably to plaintiff, for services furnished by him worth at the very most from $7,000 to $10,000, if he were to receive a one-third interest in the theater therefor, he would gain an asset worth from $25,000 to $30,000. This is hardly consistent with plaintiff's theory that Mrs. Eskin was a shrewd business woman.

It is our conclusion that the determination by the trial court, that plaintiff has failed to prove that there had been a meeting of the minds of the parties upon the essential elements necessary to establish an existing partnership, is not against the great weight and clear preponderance of the evidence.

We next turn to the contention that such determination of the trial court was based upon an erroneous view of the

law. In support of this contention the following statement appearing in the trial court's memorandum opinion is quoted in plaintiff's brief:

"Again referring to the salient features of a partnership,— community of interest in the capital employed, community of power in administration, and community of interest in profits and losses,—what does the proof show? First, no community of interest in the capital employed (the plaintiff only having contributed supervision in construction and paid no bills); . . ."

Counsel for plaintiff urges that the foregoing statement is in direct conflict with the well-recognized principle of partnership law, that one partner may contribute all the capital and the other contribute only services. Such principle is stated in 40 Am. Jur., Partnership, p. 159, sec. 45, as follows:

"On the other hand, it is not necessary that there should be a combining of property furnished in part by each of the associates to constitute a partnership. One partner may contribute all of the capital, and the other only his skill and labor."

We do not interpret the above-quoted statement of the trial court in the same manner as does counsel. The trial court did not state that if plaintiff successfully had proved his claim that a parol partnership agreement had been agreed upon, whereby plaintiff was to receive a one-third interest in the outdoor-theater property in return for his services, that there then would not have been a community of interest in the capital assets of the partnership. Instead it seems to us that the trial court was in effect merely stating that plaintiff had failed to prove any community of interest in the capital assets of the theater.

This brings us to the alternative ground of relief sought by plaintiff on this appeal, *i. e.*, that, if the trial court's determination that no partnership was proved be upheld, then the

value of $3,700 placed upon plaintiff's services is too low in view of the undisputed evidence on that issue.

Vogel was plaintiff's expert witness as to the reasonable value of plaintiff's services, and, as previously stated herein, Vogel's estimate thereof was from $7,000 to $10,000. Defendant called one Hall as her expert on such issue. Hall is field representative of the RCA Service Company assigned to southern and western Wisconsin. He has had wide training and experience in the construction of outdoor theaters, having been present during the construction of 10 to 15 of such theaters. He testified that he was reasonably familiar with the general type of work that has to be done in the construction of an outdoor theater. It was his opinion the maximum value of services, such as rendered by plaintiff in supervising the construction of the theater, was from $500 to $600 per month.

We consider the only competent evidence on the issue of the value of plaintiff's services in supervising the construction of the outdoor theater to be the foregoing testimony of the witnesses Vogel and Hall. However, the trial court determined the value of such services to have been $100 per week, basing the same on the compensation which was paid to plaintiff as theater manager after May 16, 1952. In the trial court's memorandum opinion comment is made of the fact that plaintiff was neither an architect nor an engineer, and also was not an experienced builder or contractor. Nevertheless, these facts were mentioned in the hypothetical question propounded to Hall in response to which he gave his estimate of $500 to $600 per month, and Hall was defendant's own witness.

Services rendered in supervising the construction of an outdoor motion-picture theater are essentially different in character from those of a manager of such a theater after it is in operation. The learned trial judge, in holding that the rate of compensation paid for the latter service was relevant

and, competent evidence of the value of the former, in effect relied upon his own independent judgment rather than the specific evidence adduced on this issue. This we have held is not permissible. *Gauger v. Hintz* (1952), 262 Wis. 333, 349, 55 N. W. (2d) 426; and *Will of Gudde* (1951), 260 Wis. 79, 49 N. W. (2d) 906.

Because there was little work done during the three winter months, although the trial court included such period in full in computing the total of thirty-seven weeks which plaintiff worked in supervising construction, we conclude that it would be equitable to base plaintiff's compensation therefor at the rate of $500 per month. Hall's testimony placing a value of $500 to $600 on such services contemplated full-time employment, and made no allowance for interruption of work due to weather conditions in the winter. At the rate of compensation of $500 per month plaintiff is entitled to recover for his services $4,269.23, or $569.23 in excess of the amount awarded by the trial court. This will require that the judgment be modified so as to permit recovery by plaintiff of such additional sum.

It is the usual practice of this court to permit the appellant to tax costs when, as a result of the appeal, the judgment below is modified to afford substantial relief to the appellant. However, in the instant appeal, plaintiff-appellant's brief is 60 pages in length and appellant's appendix consists of 367 pages, and by far the greater portion of both the brief and the appendix relates to the issue of the alleged partnership as to which plaintiff has been unsuccessful. We deem it would be inequitable to permit plaintiff to tax as costs the printing of his entire brief and appendix. The portions of the brief and appendix devoted to the issue as to which plaintiff has been to a degree successful do not exceed an aggregate of 75 pages, and, while plaintiff will be permitted to tax costs, the number of pages of printing to be included therein shall be limited to 75. By so doing we do not intend to imply that plaintiff's counsel was prolix in the drafting of either

the brief or the appendix, because such is not the case, for a long brief and appendix were required in order to properly present the partnership issue.

*By the Court.*—Judgment modified so as to increase the amount plaintiff is to recover thereunder by the sum of $569.23, and, as so modified, is affirmed. Plaintiff shall be entitled to tax costs subject to the limitation stated in the opinion as to the pages of printing to be included therein.