HECK & PAETOW CLAIM SERVICE, INC., Plaintiff-Respondent and Cross-Appellant, v. Caryl J. HECK, Personal Representative of the Estate of John P. Heck, deceased, Defendant-Appellant and Cross-Respondent.

Supreme Court

*No. 77–317. Submitted on briefs December 5, 1979.—Decided January 8, 1980.*
(Also reported in 286 N.W.2d 831.)

For the appellant the cause was submitted on the brief of *L. E. Vaudreuil* and *Vaudreuil & Vaudreuil* of Kenosha.

For the respondent the cause was submitted on the brief of *Wesley R. Mueckler* and *Brown, Black, Riegelman & Kreul* of Racine.

COFFEY, J. This is an appeal from a judgment of the Circuit Court for Kenosha County. Caryl J. Heck (hereinafter the appellant), the personal representative of the estate of John P. Heck, appeals from that portion of the judgment dismissing her second counterclaim for the net proceeds of the claims adjusting service. Heck & Paetow Claim Service, Inc. (hereinafter the plaintiff-respondent), cross-appeals from another portion of the same judgment granting the appellant's first counterclaim for all the accrued interest from the moneys or securities on deposit.

The trial court record establishes that in 1956 Ralph N. Anderson (hereinafter Anderson), not a party to this action, and John P. Heck (hereinafter Heck), incorporated a business as equal shareholders to adjust insurance companies' casualty claims and fire losses under the name of Anderson-Heck, Inc.

In 1958 Anderson left the corporation and Melvin Paetow (hereinafter Paetow), purchased Anderson's stock, thus becoming an equal shareholder with Heck in the corporation. Following the purchase and stock transfer, the articles of incorporation were amended to change the name of the corporation to Heck & Paetow Claim Service, Inc. Messers. Heck and Paetow's only income was derived from their annual salary of $15,000 for adjusting claims and other casualty losses as employees of the corporation.

On March 10, 1961, Heck and Paetow entered into a stock repurchase agreement with the corporation to assure ". . . to the surviving stockholder a succession to the ownership and control of the corporation through its acquisition of the shares of a stockholder at the time of his death or upon a prior sale. . . ." The agreement required the corporation to purchase, and the personal representative of a deceased shareholder to sell to the corporation, all the stock of the corporation owned by the deceased shareholder, at the time of his death, at a stipulated price. At the time of the original stock agreement in 1961 Heck and Paetow each owned 200 shares of stock valued at $50 each, later increased to $100 per share. The stock repurchase agreement also provided that the corporation purchase life insurance policies on the lives of the shareholders in the amount of $20,000, and naming the corporation as beneficiary. Upon the death of a shareholder, the agreement directed that the corporation tender the insurance policy on the shareholder's life to the insurer and that the proceeds be used to repurchase the decedent's stock in the corporation. Any remaining balance of the proceeds after repurchase of the stock was to be retained by the corporation as general corporate funds.

Heck died of a heart attack on October 26, 1974, and the corporation, pursuant to the repurchase agreement, obtained the life insurance proceeds in the amount of $20,000 from the policies on Heck's life. On December 13, 1974, the corporation tendered the $20,000 payment to the appellant, Mrs. Heck, the agreed value of the decedent's stock in the corporation. Caryl Heck, as personal representative of Heck's estate, refused to accept the $20,000 agreed tender and refused to convey the decedent's stock to the corporation. Following her refusal, the respondent, Heck & Paetow Claim Service, Inc., deposited the $20,000 in an interest bearing savings account and commenced an action in the circuit court for Kenosha

County for specific performance of the stock repurchase agreement. The appellant answered by admitting that the estate was bound by the terms of the stock repurchase agreement, and affirmatively alleged that she was ". . . ready and willing to tender said stock certificate, properly endorsed," to the court to be held until such time as the respondent tendered to the appellant the $20,000 life insurance payment pursuant to the stock repurchase agreement and all the interest accrued while held in the savings account.

The appellant also filed two counterclaims, one repeating the allegation set forth in her answer stating that Heck's estate was entitled to all the interest which had accrued on the $20,000, payable under the terms of the stock repurchase agreement, from the time the corporation had placed the money in an interest-bearing savings account until the time the appellant actually receives payment of the proceeds.

As a second counterclaim she alleged that ". . . by agreement between the said John P. Heck, owner of one-half of the stock of said corporation, and Melvin H. Paetow, owner of the remaining one-half of the stock of said corporation . . . each was to receive one-half of the net proceeds of said corporation as compensation for their services as employees of said corporation." Thus, the appellant claims that Heck's estate is entitled to receive one-half of the remaining net proceeds held by the corporation at the time of his death.

The respondent-corporation filed a motion for summary judgment requesting the court to:

1. grant the relief demanded in its complaint; and

2. deny the relief demanded by the appellant in the two counterclaims.

The trial court entered a judgment on July 20, 1977, and ordered specific performance of the stock repurchase agreement, and further directed the appellant to transfer the decedent's stock to the corporation. The court ruled

in favor of the appellant on the first counterclaim and stated that Heck's estate was entitled to the interest accrued on the $20,000 from the time it was placed in the savings account until the time it was paid to the appellant. On the other hand, the court denied the appellant's second counterclaim for one-half of the net proceeds of the corporation finding no evidence to sustain the appellant's contention that a partnership agreement in fact existed between Heck and Paetow for an equal division of the net proceeds. The court ruled that the stock repurchase agreement was intended to be the only method available for the corporation to compensate the decedent's estate upon his death.

Following the court's decision, the appellant tendered Heck's stock to the corporation in exchange for the proceeds of the insurance policies pursuant to the terms of the repurchase agreement and thus is not an issue on appeal.

*Issues*

1. Did the trial court err in granting the appellant's first counterclaim for accrued interest on the purchase price of the stock?

2. Did the trial court err in denying the appellant's second counterclaim for one-half of the net proceeds of the respondent-corporation, in addition to the agreed value of the stock pursuant to the stock repurchase agreement, as compensation for Heck's services to the corporation?

On appeal both parties seek review of a part of the summary judgment entered by the trial court granting the appellant's first counterclaim and denying the second counterclaim.

The purpose of summary judgment is to obviate the need for a trial where there is no genuine issue as to any material facts. It is a judgment rendered on the merits

without a trial. *Truesdill v. Roach,* 11 Wis.2d 492, 499, 105 N.W.2d 871 (1960) ; *Town of Blooming Grove v. City of Madison,* 275 Wis. 328, 333, 81 N.W.2d 713 (1957). The summary judgment procedure does not function as a substitute for a trial of any genuine issue of material fact, but permits a decision based on affidavits, records and for depositions. *Alonge v. Rodriquez,* 89 Wis.2d 544, 553, 279 N.W.2d 207 (1979) ; *Lecus v. American Mutual Ins. Co. of Boston,* 81 Wis.2d 183, 190, 260 N.W.2d 241 (1977). The party moving for summary judgment must demonstrate that a trial is not necessary and establish a record sufficient to demonstrate to the satisfaction of the court that there is no triable issue of material fact on any issue presented. *Hilkert v. Zimmer,* 90 Wis.2d 340, 342, 280 N.W.2d 116 (1979) ; *Kraemer Bros., Inc. v. United States Fire Ins. Co.,* 89 Wis.2d 555, 565–66, 278 N.W.2d 857 (1979) ; *Wright v. Hasley,* 86 Wis.2d 572, 577, 273 N.W.2d 319 (1979). Any reasonable doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Kraemer Bros., Inc. v. United States Fire Ins. Co., supra* at 566. If the trial court has determined the movant has proved to the court's satisfaction that there is no genuine issue of material fact as a matter of law, then the trial court should enter judgment. *Wright v. Hasley, supra* at 578–79. *See:* sec. 802.08(3), Stats. When called upon to review the granting or denial of a summary judgment motion, this court must apply the standards set forth in sec. 802.08, in the same manner as trial courts. *Wright v. Hasley, supra* at 579.

In this case, the respondent contends that the trial court erred in granting the appellant's counterclaim for accrued interest on the purchase price of stock. There is no dispute that the $20,000 purchase price was deposited in an interest bearing account only after the appellant refused to accept tender of the money for Heck's stock

as required in the repurchase agreement. Since no issue of material fact existed, the question of whether to grant judgment on the first counterclaim is a matter which could properly be decided by summary judgment.

As a general rule where a party has made a tender of money as a prerequisite to the enforcement of a right and that money is paid into the court, title to that money does not pass to the opposing party, but remains in the party making the tender, subject to the final outcome of the suit. *See: Winn v. Krow,* 144 Okla. 110, 289 P. 756, 758 (1930); *Superior Oil Co. v. Sinton Independent School District,* 431 S.W.2d 383, 390–91 (Tex. Civ. App. 1968); *Quinn v. Phipps,* 93 Fla. 805, 113 So. 419, 426 (1927); 74 Am. Jur. 2d *Tender* §47 at 578 (1974). If title to the tendered sum remains in the party seeking to enforce an affirmative right when it is paid into *court, a fortiori,* title also remains with the party placing the money on deposit.

Moreover, the interest, as a consideration paid for the use or detention of money or for forbearance in demanding it when due, is always said to be an accretion to or increment to the fund earning it and, unless lawfully separated from the fund, becomes a part of it. *Estreen v. Bluhm,* 79 Wis.2d 142, 156, 255 N.W.2d 473 (1977); *In re Estate of Sharp,* 18 Cal. App.3d 565, 584, 95 Cal. Rptr. 816, 832 (1971). The principal sum in this case was derived from several life insurance policies, purchased by the corporation, on Heck's life and listing the corporation as beneficiary. When the corporation tendered to the appellant, Caryl Heck, the sum of $20,000 for the purchase of the decedent's share in the corporation, it was offering a corporate asset for the purchase of the stock. Title to that asset was in the corporation. When the appellant refused the money tendered, the

plaintiff corporation placed the sum on deposit in an interest bearing account, and thus title did not pass, but remained in the corporation. Since the corporation had title to the principal sum, it follows that it also had title to the accrued interest on the principal sum. Therefore, we hold that the respondent corporation was entitled to the accrued interest on the principal sum while on deposit in the interest bearing account. We reverse that part of the trial court's judgment granting the first counterclaim in favor of the appellant and hold that the respondent corporation was entitled to the accrued interest on the $20,000 stock purchase price.

Secondly, the appellant contends that the trial court erred in denying her second counterclaim for one-half of the net proceeds of the corporation. The appellant in her brief contends that even though the business was operated under the guise of a corporation, it was actually a joint venture or partnership. It is alleged that the business was established as a corporation merely to take advantage of certain tax benefits.

It is the law of this state that there cannot be two business relationships, *i.e.,* one corporate and the other a personal one, between identical parties at the same time, with regard to one business venture and involving the same subject matter *without agreement of any kind. Jolin v. Oster,* 44 Wis.2d 623, 633, 172 N.W.2d 12 (1969); *McDonald v. McDonald,* 53 Wis.2d 371, 379–80, 192 N.W.2d 903 (1972). The appellant seeks to bring the facts of this case within the ruling of *Jolin.* The appellant under this theory sought to persuade the court that the corporation was merely an instrumentality of a pre-existing partnership relationship between Messrs. Heck and Paetow and thus the decedent, as a partner, was entitled to share equally in the profits and surplus remaining after all liabilities were satisfied pursuant to sec.

178.15 (4), Stats.,[1] of the Uniform Partnership Act.

Wisconsin case law recites that a partnership is an association of two or more persons formed to carry on a business as co-owners for profit. Sec. 178.03 (1), Stats. A partnership agreement, whether expressed or implied, may be in writing or proven by circumstantial evidence demonstrating that the conduct of the parties was of such a nature as to clearly express the mutual intent of the parties to enter into a contractual relationship. *Sander v. Newman*, 174 Wis. 321, 328, 181 N.W. 822 (1921); *Hayton v. Appleton Machine Co.*, 179 Wis. 597, 601, 192 N.W. 168 (1923); *Bartelt v. Smith*, 145 Wis. 31, 35, 129 N.W. 782 (1911). Every partnership depends on the mutual consent and understanding of its members, and as a result, there must be a meeting of minds of the parties, and thus the intention of one party alone cannot create a partnership. The burden of proof of establishing a partnership relationship is on the party claiming that such a valid relationship exists. *Morris v. Resnick*, 268 Wis. 410, 415, 67 N.W.2d 848 (1955); *Anderson v. Anderson*, 54 Wis.2d 666, 669, 196 N.W.2d 727 (1972).

In *Skaar v. Department of Revenue*, 61 Wis.2d 93, 211 N.W.2d 642 (1973), the court held that the four elements necessary to create a partnership under ch. 178, Stats., are:

1. The contracting parties must intend to form a *bona fide* partnership and accept the legal requirements and duties necessary to such a relationship.

---

[1] "178.15 **Rights and duties of partners.** The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules:

". . .

"(4) A partner shall receive interest on the capital contributed by him only from the date when repayment should be made."

2. There must exist a community of interest in the capital employed by the partnership.

3. Each partner must have an equal voice in the management of the partnership operation.

4. The profits and losses of the corporation must be shared and distributed. *Id.* at 98–99; *Stern v. Department of Revenue,* 63 Wis.2d 506, 509–10, 217 N.W.2d 326 (1974) ; *In re Estate of Schaefer,* 72 Wis.2d 600, 605, 241 N.W.2d 607 (1976).

The ultimate and controlling test as to the existence of a partnership is the parties' *intention* of carrying on a definite business as co-owners. Such intention may be determined from the terms of the parties' agreement or from their conduct under the circumstances of the case. *Bartelt v. Smith, supra* at 35.

The existence of a valid partnership will not be presumed but must be proved. The burden of proving the existence of a partnership agreement was on the appellant asserting its existence. The appellant submitted no evidence, affidavits, depositions, corporation minutes or records, to demonstrate that there was a triable issue of fact as to the existence of a partnership. On the other hand, the respondent, the movant on the summary judgment motion, provided evidence of corporate intent by means of affidavits, etc., demonstrating that the only reasonable conclusion possible was that Heck and Paetow were equal shareholders in a corporation. Therefore, Heck's estate was not entitled to one-half of the net proceeds of the corporation but rather was entitled only to the $20,000 provided for in the stock repurchase agreement. Thus, we affirm that part of the trial court's judgment denying the appellant's second counterclaim.

*By the Court.*—Judgment reversed in part; affirmed in part and cause remanded for further proceedings consistent with this opinion.