SCHROEDER, GEDLEN, RIESTER & MOERKE, a law partnership, by C. James Riester, partner thereof, Plaintiffs,

v.

Harold SCHOESSOW, Defendant,

Kenneth G. CARLSON, Russell D. Jones, and Eugenie Esser, Defendants and Third-Party Plaintiffs-Appellants,†

CITY OF MEQUON, a municipal corporation organized under the laws of Wisconsin, Third-Party Defendant-Respondent.

Court of Appeals

*No. 80–528. Submitted on briefs April 30, 1981.—*
*Decided June 10, 1981.*
(Also reported in 309 N.W.2d 10.)

† Petition to review granted.

For the defendants and third party plaintiffs-appellants the cause was submitted on the brief of *Richard E. Reilly* of *Gimbel, Gimbel and Reilly* of Milwaukee.

For the third party defendant-respondent the cause was submitted on the brief of *Robert A. Christensen* and *Nancy J. Sennett* of *Foley & Lardner* of Milwaukee.

Before Voss, P.J., Brown and Scott, JJ.

SCOTT, J.  Schroeder, Gedlen, Riester and Moerke, a law firm, sued Kenneth Carlson, Russell Jones, Eugenie Easer and Harold Schoessow, who were at all times relevant to this action, members of the common council, *i.e.*, aldermen, of the City of Mequon, for nonpayment of services rendered in the amount of $13,818. The legal services involved defending against an order to show cause why these aldermen should not be found in con-

tempt of court for their failure to vote to approve the allocation of sewer extensions for a particular subdivision as ordered in a peremptory writ of mandamus issued by the circuit court for Ozaukee county, Judge Warren Grady presiding. Carlson, Jones and Esser filed a third-party complaint against the City seeking a judgment that the City shall pay all sums they owed to the law firm. They appeal from a summary judgment dismissing their third-party complaint. We affirm.

The following facts are undisputed. Early in 1978, the common council of the City of Mequon approved the concept of Country Squire Estates, a subdivision being developed by a certain Ted Weissinger. On May 2, 1978, the common council passed a resolution not to allow any additional sanitary sewer extensions from a particular sewer trunk line.

On September 5, Weissinger appeared by an attorney before the common council to determine whether the May 2 moratorium on sanitary sewer extensions applied to his subdivision. The common council referred the matter to its public works committee.

On September 8, Weissinger petitioned the Ozaukee county circuit court for a writ of mandamus directing the common council, its individual members and the mayor to approve the allocation of sanitary sewer extensions for twenty-six units in Country Squire Estates. The court issued an order directing that such approval be given or that cause be shown why approval was not given.

On September 12, the common council voted four to three against approval, with aldermen Carlson, Jones, Esser and Schoessow voting as the majority.

On September 13, a hearing was held on the order to show cause. On behalf of the common council, the city attorney argued to the court that the writ should be quashed on the ground that the relief sought was a dis-

cretionary act of the common council. The court found that according to the terms of a prior resolution of the common council, the council's approval of sewer allocations was a ministerial, not discretionary, act. Accordingly, on September 19, the court issued a peremptory writ directing the common council, its individual members and the mayor to, without delay, vote to approve the allocation of twenty-six sewer extensions for Country Squire Estates.

On September 19, the common council met. A motion was made and seconded to approve the sewer allocation. Alderman Carlson moved to table until the return of alderman Schoessow, who was out of the country. The city attorney stated that he felt it was his duty to advise the council members that if they tabled, they "could very well be subject to some sanctions from the judge." The motion to table failed. By a three to three vote, the motion to approve the allocation also failed, with Carlson, Jones and Esser voting against approval. The mayor was absent and, therefore, unable to break the tie.

On September 20, a hearing was held, and the court ordered Carlson, Jones and Esser to appear on September 22 to show cause why they should not be held in contempt.

On September 22, Carlson, Jones and Esser appeared before the court with their attorneys, Schroeder, Gedlen, Riester and Moerke. The city attorney refused to represent the aldermen in the contempt proceedings. The court stated that no appeal had been taken from the peremptory writ of mandamus and that to disobey the mandate of that writ constituted contempt of court. At the request of Carlson, Jones and Esser, the contempt hearing was adjourned until September 28.

On September 25, the common council held a special meeting. A motion was made to adopt a resolution authorizing employment of the Schroeder law firm for the

purpose of appealing the peremptory writ. The motion was seconded and passed. On September 26, the mayor vetoed the September 25 resolution because, in his words, it "seems to imply that the personal costs of the contempt proceedings might be picked up by the City and I feel that it is not a proper expense for the City to bear." The common council failed to override the veto.

On September 28, the contempt hearing was continued. At the conclusion of the hearing, the court stated that it believed a compromise was possible between Weissinger and the council members who opposed the sewer allocation. The court temporarily withdrew its finding that Carlson, Jones and Esser were in contempt. A compromise was ultimately reached, and the court dismissed the contempt proceedings upon stipulation of the parties.

Schroeder, Gedlen, Riester and Moerke subsequently instituted the present action by filing a complaint against Carlson, Jones, Esser and Schoessow. The law firm alleged that these aldermen had failed to pay for the services it had rendered them in connection with the contempt proceedings. Carlson, Jones and Esser filed a third party complaint against the City seeking a judgment that the City was liable for payment of their attorney fees. The City moved for summary judgment on the ground that it was not required to pay the attorney fees. The trial court granted the motion and dismissed the third party complaint. Carlson, Jones and Esser appeal.

When called upon to review the granting or denial of a summary judgment motion, this court must apply the standards set forth in sec. 802.08, Stats., in the same manner as trial courts. *Heck & Paetow Claim Service, Inc. v. Heck,* 93 Wis.2d 349, 356, 286 N.W.2d 831, 834 (1980).

In *Grams v. Boss,* 97 Wis.2d 332, 338–39, 294 N.W.2d 473, 476–77 (1980), the supreme court reiterated the

steps a court must follow in determining whether summary judgment should be granted. The first step is to examine the pleadings to determine whether a claim has been stated and whether a genuine issue of fact is presented. If the complaint states a claim and the pleadings show the existence of factual issues, the second step is to examine the moving party's affidavits and other proof to determine whether the party has made a prima facie case for summary judgment. To make a prima facie case, a moving defendant must show a defense which would defeat the plaintiff. If the moving party has made a prima facie case, the third step is to examine the affidavits and other proof of the opposing party to determine whether there exist disputed material facts or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the opposing party to a trial.

In their third party complaint, Carlson, Jones and Esser allege that pursuant to sec. 895.46, Stats., the City is liable for the attorney fees they incurred when they were made parties to "a legal proceeding." The statute provides, in relevant part:

**895.46  State and political subdivisions thereof to pay judgments taken against officers.** (1) (a) If the defendant in any action or special proceeding is a public officer or employe and is proceeded against in an official capacity or is proceeded against as an individual because of acts committed while carrying out duties as an officer or employe and the jury or the court finds that the defendant was acting within the scope of employment, the judgment as to damages and costs entered against the officer or employe in excess of any insurance applicable to the officer or employe shall be paid by the state or political subdivision of which the defendant is an officer or employe. . . . *Regardless of the results of the litigation the governmental unit, if it does not provide legal counsel to the defendant officer or employe, shall pay reasonable attorney fees and costs of defending the*

*action, unless it is found by the court or jury that the defendant officer or employe did not act within the scope of employment.* [Emphasis added.]

Our supreme court has held that the term "litigation" as used in sec. 895.46(1), Stats., applies only to civil cases. *Bablitch & Bablitch v. Lincoln County*, 82 Wis.2d 574, 581, 263 N.W.2d 218, 222 (1978). Further, sec. 895.46(1), Stats., "must be construed to create one class of cases for which payment of attorney's fees and costs is mandatory. Such a class is made up of those cases where the governmental unit is absolutely liable under sec. [895.46(1), Stats.,] for the payment of any judgment rendered against the officer." *Id.* at 584, 263 N.W.2d at 224. A governmental unit is absolutely liable under sec. 895.46(1), Stats., for the payment of any judgment rendered against an officer only when (1) the officer is proceeded against in his official capacity or as an individual because of acts committed while carrying out his duties as a public officer and (2) a court or jury has *not* found that the officer acted beyond the scope of employment. *Thuermer v. Village of Michicot*, 95 Wis.2d 267, 272-73, 290 N.W.2d 689, 692 (1980).

In the present case, it is beyond doubt that the City of Mequon would not have been absolutely liable for payment of any judgment rendered against the common council members in the contempt proceedings. The City would not have been absolutely liable because, in acting contrary to the express order of the court, the council members acted beyond the scope of their employment as a matter of law. Because the City would not have been absolutely liable for the payment of any judgment rendered in the contempt proceedings, it is not required to pay for the council members' attorney fees incurred in those proceedings. We need not decide whether the con-

tempt proceedings in this case, which are civil in nature, constitute "litigation" as that term is used in sec. 895.-46(1), Stats.[1]

Our holding that in acting contrary to the writ of mandamus the council members acted beyond the scope of their employment is supported by the following:

> Where a municipal officer incurs a loss in the discharge of his official duty in a matter in which the corporation has an interest, and in the discharge of a duty imposed or authorized by law, and in good faith, the municipal corporation has the power to appropriate funds to reimburse him, unless expressly forbidden.
>
> . . . .
>
> But municipal officials who have been adjudged guilty of contempt of court in violating a court order, cannot be said to be acting in good faith nor in the bona fide discharge of their duties. They are not entitled to indemnity from the municipal corporation for expenses incurred in their defense of the contempt proceedings.

3 E. McQuillin, Municipal Corporations §12.137, at 575–77 (3rd ed. 1973).

Carlson, Jones and Esser argue that four genuine issues of material fact exist which entitle them to a trial in their third party action. The first issue they point to is whether their actions in defying the court order were criminal in nature. This issue is moot because we have determined that their actions were beyond the scope of their employment as a matter of law.

The second issue is whether the proceedings against Carlson, Jones and Esser constituted contempt proceedings or whether they constituted further litigation on the peremptory writ of mandamus. We believe the undisputed facts show that the proceedings against the alder-

---

[1] The difference between civil and criminal contempt is reviewed in *Schroeder v. Schroeder*, 100 Wis.2d 625, 632–39, 302 N.W.2d 475, 479–82 (1981).

men constituted contempt proceedings. Further litigation on the peremptory writ of mandamus, *e.g.*, an appeal of the writ, would have required the common council to act as a body. The proceedings against Carlson, Jones and Esser for their individual actions in defying the court order clearly did not involve the common council as a body.

The third issue is whether Carlson, Jones and Esser "knew" of the alleged "illegality" of their actions. We believe the undisputed facts show that Carlson, Jones and Esser knew that by voting against approval of the sewer allocation, they were defying a court order directing them to approve the allocation. According to the minutes of the common council meeting of September 19, 1978, Alderman Carlson stated: "The court has acted far outside its jurisdiction by attempting to compel the Mequon City Council to change its vote on the hookup resolution. . . . Do not be swayed by this empty threat of contempt." The intentional disobedience of a court order constitutes contempt of court. Sec. 785.01(1)(b), Stats.

The fourth issue is whether Carlson, Jones and Esser were acting within the scope of their employment. We have ruled as a matter of law that they were not.

*By the Court.*—Judgment affirmed.