FIRST CONSTRUCTION COMPANY, a Minnesota corporation, Metro Office Parks Company, a Minnesota limited partnership, and John R. Neumeier, an individual, Appellants,

v.

TRI–SOUTH MORTGAGE INVESTORS, a Massachusetts voluntary association (known as a business trust), Respondent.

No. 51129.

Supreme Court of Minnesota.

July 10, 1981.

Gray, Plant, Mooty, Mooty & Bennett, Michael R. Cunningham and John S. Crouch, Minneapolis, for appellants.

Olson, Gunn & Seran, Minneapolis, for respondent.

WAHL, Justice.

Plaintiff First Construction Company (First Construction) appeals from an order of the Hennepin County District Court which required that the indemnification bond offered by Tri-South Mortgage Investors (Tri-South) be accepted, that certain funds held in escrow be paid to Tri-South, and that interest in the escrow account be paid to Tri-South. We affirm in part and reverse in part.

First Construction borrowed $500,000 from Tri-South on November 16, 1973. A note was executed with First Construction promising to repay that amount in full, under certain conditions set out in the note, by November 1983. Subsequently the parties agreed, by letter of intent dated January 31, 1977, that Tri-South would accept $450,000 in full satisfaction of the promissory note provided that First Construction make this payment by August 1, 1977.

When First Construction attempted to comply with the terms of the letter of intent, Tri-South was unable to deliver the original executed promissory note. First Construction demanded return of the note or full indemnity from liability on the note before paying the money to Tri-South. Receiving neither, First Construction instead deposited $450,000 principal and $8,227.42 accrued interest into escrow with the National City Bank of Minneapolis. The trial court ordered that those funds be removed only by agreement of the parties or by court order. The trial court found that the promissory note could be construed as a negotiable instrument and ordered the escrow deposit continued to preserve the status quo of the parties until final resolution of the dispute.

After further proceedings, the trial court ordered that the indemnification bond offered by Tri-South, as principal, and by First Atlanta Corporation, as surety, be accepted by First Construction, that the funds in the escrow account be paid to Tri-South, and that the interest earned on that account from the date of the trial court's order of July 29, 1977, also be paid to Tri-South. From this order First Construction appeals. The entry of judgment has been stayed pending appeal.

The appeal raises two questions for our determination: first, whether the trial court abused its discretion in requiring First Construction to accept the indemnification bond offered by Tri-South, and second, whether the trial court properly ordered the interest earned on the escrow account to be paid to Tri-South.

1. *The Indemnification Bond*: It is clear under Minnesota law that the court may require security indemnifying the debtor, who has satisfied the obligation underlying a lost instrument, against "loss by reason of further claims on the instrument." Minn.Stat. § 336.3–804 (1980). The statute makes the furnishing of indemnity discretionary with the court, rather than mandatory.[1]

The proposed bond itself is made by Tri-South as principal and First Atlanta Corporation as surety in favor of the three named appellants. Under the terms of the bond, Tri-South warrants that it has not conveyed the note in any way, nor has it authorized any third party to do so. Tri-South also warrants that it believes the note is lost or destroyed, has no knowledge of its present

---

1. "This section changes the rule of Minn.Stat. § 601.03 (1961) [repealed 1965] by making the furnishing of indemnity discretionary with the court rather than mandatory." Minn.Code Comment 21B Minn.Stat.Ann. 598 (West 1966). "That, however, is probably not a significant change since the court will always require appropriate indemnity except where there is no real possibility of double recovery." *Id.* at 599.

*Accord*, Comment to U.C.C. § 3–804 (identical to Minn.Stat. § 336.3–804):

    If the claimant testifies falsely, or if the instrument subsequently turns up in the hands of a holder in due course, the obligor may be subjected to double liability. The court is therefore authorized to require indemnifying the obligor against loss by reason of such possibilities. There may be cases in which so much time has elapsed, or there is so little possible doubt as to the destruction of the instrument and its ownership that there is no good reason to require the security. The requirement is therefore not an absolute one, and the matter is left to the discretion of the court.

21B Minn.Stat.Ann. 599 (West 1966).

location, and has no knowledge of a claim on the note by any third party. The principal and surety agree to indemnify appellants against all costs arising from any judgment finding a third party a holder in due course of the note endorsed by the principal or an agent, except that the surety is liable only for suits commenced before December 2, 1984.

The original promissory note was to be partially amortized in equal payments from January 1, 1977, to November 1, 1983, with the balance payable on November 30, 1983. Thus the six-year limitation on contract suits will have run, as to each amount due, after November 30, 1989. Minn.Stat. § 541.05, subd. 1(1) (1980). By 1984, when the surety is to be released under the terms of the indemnification bond, the limitation will have run on only the earlier monthly payments. The maximum liability on the note at any time, excluding litigation costs, will be $800,000. By the date of the trial court's release of the surety the amount of maximum liability will have decreased to about $750,000 and will steadily decrease to about $560,000 on November 30, 1989. After that date there will be no liability on the note.

Appellants' objection to the indemnification bond as written is that it exposes them to the risk that Tri-South will be unable to honor its obligation to indemnify (1) costs above $800,000 prior to release of the surety and (2) all liabilities after release of the surety.

Here the trial court, in its memorandum of law, cited as factors relevant in deciding the necessity and scope of proper indemnification the possibility of double recovery upon the instrument, the passage of time, the probable destruction of the instrument, and the financial strength of the indemnitor.

Nonetheless, it is common experience that even companies with the soundest prospects may develop financial difficulties as they encounter unforeseen hurdles. Also, even if the chances of a successful claim on the note are small, either because of the destruction of the note or because of the requirements that a third party take the note for value and in good faith, our statutory presumption of negotiability may well place an onerous burden on appellants if the note should surface unexpectedly. *See* Minn.Stat. §§ 3.301–3.307 (1980) (U.C.C. art. 3, Rights of a Holder). Moreover, there is no requirement in the indemnification bond that Tri-South's employee-dishonesty policy be kept in force, and no showing by respondent that appellants would be able to achieve full indemnification from the proceeds of such policy.

If the risks of exposure are indeed small, as Tri-South asserts, the costs of providing adequate security should not be great. Equity requires that Tri-South, the party found responsible for the lost note, bear those risks by producing adequate security before being entitled to receive the proceeds from the note. The question then becomes what is adequate security.

While not binding, commentary and cases from other jurisdictions are instructive in the determination of proper indemnification.

[The U.C.C.] contains an understandable provision which requires the plaintiff in the 3–804 suit to indemnify the defendant against loss which might arise if a holder in due course turned up with the instrument after payment had been made to the non holder-owner under 3–804. * *

\* \* \* \* \* \*

Presumably indemnification under 3–804 must protect the defendant not only against the possibility that a holder in due course may appear and in fact recover from him, but against the possibility that he will incur legal fees in defending against those who claim to be holders in due course but in fact are not holders in due course and therefore lack valid claims against the defendants.

J. White & R. Summers, *Handbook of the Law under the Uniform Commercial Code* 547, 549 (2d ed. 1980).

Where the owner of a lost check is a banking institution, courts have held that a

mere letter of indemnity is sufficient. *E. g., National Shawmut Bank v. International Yarn Corp.*, 322 F.Supp. 116, 120 (S.D.N.Y. 1970) (applying Tennessee law). At the other extreme, New York law provides that "the court shall require security in an amount fixed by the court not less than twice the amount allegedly unpaid on the instrument."[2] N.Y. U.C.C. § 3–804 (McKinney 1964). California requires a "sufficient indemnity bond." Cal.Com.Code § 3804 (West 1964).

Even though those cases remove some discretion from the court, New York leaves the time limit on the indemnification bond, and California leaves both the time limit and the minimum amount, to the discretion of the trial court. Our legislature, and those of most states, has chosen to leave even the bare imposition of a bond to the discretion of the trial court.

■ While ordinarily the trial court's findings of fact will not be set aside unless clearly erroneous, *Action Time Carpets, Inc. v. Midwest Carpet Brokers, Inc.*, 271 N.W.2d 36, 40 (Minn.1978), the standard of review in cases involving the determination of what security is adequate would be whether the trial-court-ordered indemnification security is clearly inappropriate.

■ Applying that standard to the facts of this case, we find that the limiting of the surety's liability to $800,000 was a proper exercise of the trial court's discretion. We find it error, however, that under the indemnification bond as approved by the trial court, the surety is liable only for suits commenced before December 2, 1984.

The bond should be reformed to provide that the time of indemnification security is extended to November 30, 1989, in order to cover the six-year limitation on contract suits.

2. *Interest Earned on the Deposit*: In 1977, First Construction wished to preserve its prepayment rights under the parties' letter of intent, which allowed a discount of $50,000 from the face value of the note in return for prepayment of the note. Not wanting to pay the money to Tri-South without receiving the note or full security against further liability on it, First Construction deposited the prepayment amount into a bank escrow deposit, together with interest accrued up to that time. First Construction then moved for "approval and standby supervision of an escrow arrangement similar to the type of relief provided by Minn.R.Civ.P. 67.03."[3] In granting the motion, the court ordered:

> That those funds now deposited in escrow with [named bank], which are in an amount not less than $458,227.42, for the benefit of Plaintiffs and Defendant shall remain on deposit subject to withdrawal on: mutual consent of Plaintiffs, Defendant and [named title insurance company]; or upon an Order of a Judge of this Court.

Even though appellants deposited the funds directly into the bank account rather than into court, Minn.R.Civ.P. 67.03 and 67.04 empower a court to order that a bank account, established by one party for that very purpose, be subject to court order. Here, the order's provision that the funds may be released by agreement of all the

---

2. Even there, however, courts have been satisfied with less if it appeared unlikely that the instruments would ever be presented or honored. *487 Clinton Ave. Corp. v. Chase Manhattan Bank*, 63 Misc.2d 715, 313 N.Y.S.2d 445 (1970); *Brook Ave. Superette Co. v. Royal Nat'l Bank Corp.*, 8 U.C.C.Rep. 885 (Civ.Ct.N.Y.1971). *Contra, Diaz v. Manufacturers Hanover Trust Co.*, 92 Misc.2d 802, 401 N.Y.S.2d 952 (1977) (construing the statute literally while questioning the justice of the statutory requirement); *Ceriale v. Goldin*, 19 U.C.C.Rep. 641 (Sup.Ct.N.Y.1976); *Guizani v. Manufacturers Hanover Trust Co.*, 9 U.C.C.Rep. 863 (Sup.Ct. N.Y.1971).

3. Rule 67.03 provides that when a party admits having "in his possession or control any money * * * which, being the subject of litigation, is held by him as trustee for another party, or which belongs or is due to another party, the court may order the same to be deposited in court or delivered to such other party with or without security, subject to further direction." Rule 67.04 provides, "Where money is paid into the court to abide the result of any legal proceedings, the judge may order it deposited in a designated state or national bank or savings bank."

parties without further order of the court does not render the account an ordinary escrow, since the purpose of such provision is to allow private settlement of the dispute without court approval.

Appellants contend that they are entitled to the interest because they retained legal title to the funds on deposit. They advance the argument that:

> As a general rule where a party has made a tender of money as a prerequisite to the enforcement of a right and that money is paid to the court, title to that money does not pass to the opposing party, but remains in the party making the tender, subject to the final outcome of the suit.

*Heck & Paetow Claim Service, Inc. v. Heck,* 93 Wis.2d 349, 357, 286 N.W.2d 831, 835 (1980).

In support of their argument that they retain legal title, appellants claim that their offer to prepay was a tender relieving them of subsequent liability for interest and that they remain at risk as to loss of the deposit. The issue here, however, is not the subsequent liability of appellants for interest. Their liability is assumed to be limited to the amount paid into the account. Furthermore, Minnesota is free to hold that appellants did not remain at risk with respect to the loss of the court-supervised deposit. *Cf. Northern Pacific Railway v. Owens,* 86 Minn. 188, 90 N.W. 371 (1902) (clerk of court and the sureties on his bond liable for loss of money deposited by him).

Even *Heck,* cited by appellant, holds that "the interest, as a consideration paid for the use or detention of money or for forbearance in demanding it when due, is always said to be an accretion to or increment to the fund earning it and, unless lawfully separated from the fund, becomes a part of it." 93 Wis.2d at 357, 286 N.W.2d at 835. Federal courts have recognized this rule. "In general, where a fund in litigation is deposited in court, interest may be recoverable [with the fund] to the extent that the fund earns interest during such time." *In re Brooks & Woodington, Inc.,* 505 F.2d 794, 799 (7th Cir. 1974) (in dictum). "There is no

reason why interest accruing on a contested fund during litigation over the fund should not be awarded to the winner of the fund." *James Talcott, Inc. v. Allahabad Bank,* 444 F.2d 451, 463 (5th Cir.), *cert. denied,* 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971). Other states have awarded interest earned on court deposits. *E. g., Hansen v. Smith,* 395 P.2d 944 (Wyo.1964).

There is a dearth of Minnesota cases on the issue of which party is entitled to interest accrued on this fund, but such authority as there is points clearly to the rule that the interest belongs to the party entitled to the fund. One treatise declares:

> Where money has been paid into court, Rule 67.04 permits the judge to order it deposited in a designated state or national bank or savings bank. If the deposit will be for a reasonably long period of time the funds should be deposited in a savings account so that the interest may be accumulated. The prevailing party will be entitled to the interest as well as the funds.

J. Hetland & O. Adamson, 3 *Minnesota Practice* 170 (1970). *Accord,* 1926 Op.Minn. Att'y Gen. no. 57, at 69, 70.

■ We see no policy reason to distinguish between awards of interest on funds on deposit pending litigation on the basis of whether the ownership of the fund itself is in dispute or whether, as here, the release of the funds depends on the resolution of a separate issue, the adequacy of indemnification security. We adopt the rule that when a deposit is subject to the jurisdiction of a court and the deposit is ultimately released to one of the parties after a determination of rights relating back to the date when the deposit came under the supervision of the court, any interest accrued thereon becomes a part of the deposit. We adopt this principle not to reward the prevailing party for prevailing but to put that prevailing party as nearly as possible in the position of having had the judgment money and the accrued interest that goes with it from the date that the court assumed control of the fund pending litigation.

Affirmed in part, reversed in part, and remanded for reformation of the indemnification bond in a manner consistent with this opinion.

SHERAN, C. J., took no part in the consideration or decision of this case.