*482 (Prosser, J.,
¶ 82 dissenting) ("In determining today that a school counselor is immune from liability for advising a student that [a course was] an acceptable NCAA-approved course when the counselor had access to a. . . document listing [the course] as [not acceptable], this court has . . . [reached a] result [that] is profoundly wrong and unjust."). This court should not persist with an interpretation of Wis. Stat. § 893.80(4) that artificially prohibits redress for wrongs commit *483 ted by the government. The government can do wrong, and when it does, it should be held accountable to those damaged by its transgressions.
⅜—! I—I
¶ 66. The majority opinion appropriately applies the two-part framework for analyzing government contractor immunity, determining first whether the contractor was an agent and second whether the action was one for which immunity is available Majority op., ¶¶ 19-20 (citing Showers, 350 Wis. 2d 509). Using this framework, I agree with the majority's determination that "Pro Electric does not enjoy governmental immunity for a failure to inspect the excavation to look for the severed sewer lateral and to refrain from backfill-ing until repairs were made." Majority op., ¶ 35. A contractor's alleged negligent failure to inspect an excavation before backfilling clearly bears no resemblance to lawmaking or adjudication and therefore does not constitute a "legislative, quasi-legislative, judicial or quasi-judicial function!]" for immunity purposes under Wis. Stat. § 893.80(4).
¶ 67. I disagree, however, with the majority's conclusion that Petitioners have "not identified any material fact supporting a reasonable inference that Pro Electric failed to comply with its duties under Wis. Stat. § 182.0175(2)(am)." Majority op., ¶ 43. A court may grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2). " 'Any reasonable doubt as to the existence of a genuine issue of material fact must be resolved against the moving *484 party' for summary judgment." Schmidt v. N. States Power Co., 2007 WI 136, ¶ 24, 305 Wis. 2d 538, 742 N.W.2d 294 (quoting Heck & Paetow Claim Serv., Inc. v. Heck, 93 Wis. 2d 349, 356, 286 N.W.2d 831 (1980)).
¶ 68. Wisconsin Stat. § 182.0175(2)(am) establishes several duties for excavators, two of which are relevant here:[9]
(am) Excavation notice. An excavator shall do all of the following:
[[Image here]]
6. Before backfilling, inspect all transmission facilities exposed during excavation to ascertain if the transmission facilities have been or may have been struck, damaged, dislocated or disrupted.
6m. Refrain from backfilling an excavation until an inspection is conducted and any necessary repairs have been made by the owner of the transmission facility.
"Transmission facilities" is a defined term in the statute and includes all underground pipes, as well as "drainage and water facilities and sewer systems." § 182.0175(1)(c).
¶ 69. The majority identifies a subtle aspect of Wis. Stat. § 182.0175(2)(am)6: "[T]he statute does not require Pro Electric to inspect its excavation; rather, it requires inspection of transmission facilities exposed during the excavation." Majority op., ¶ 42. Recognizing that subdivision 6 creates a duty to inspect exposed transmission facilities rather than a duty to inspect the excavation itself properly focuses interpretation of the subdivision on the word "ex *485 posed." To "expose" something is "[t]o make [it] visible." American Heritage, supra, at 625; see also Webster's Third New International Dictionary 802 (1986) [hereinafter Webster's] (defining "expose" as "lay open to view: lay bare: make known: set forth"). Here, Pro Electric did not see or know about the severed clay sewer lateral because it blended in with the surrounding soil, and after-the-fact pictures of the trenched lateral do not establish that it was exposed during excavation.
¶ 70. But our analysis does not end there. Wisconsin Stat. § 182.0175(2)(am)6m also imposes a duty to refrain from backfilling "until an inspection is conducted." One reasonable reading of the statute might be to assume the inspection mentioned in subdivision 6m is the same "inspect [ion of] all transmission facilities exposed during excavation" required by subdivision 6. The scope-of-subparts canon of statutory construction, however, counsels against reading such independent subdivisions together in that manner. See Antonin Scalia & Bryan A. Garner, Reading Law 156-60 (2012) ("Material within an indented subpart relates only to that subpart; material contained in unindented text relates to all the following or preceding indented sub-parts."). Subdivision 6m is not a subpart of subdivision 6 and speaks in much broader terms. To "inspect" something is "to view closely and critically (as in order to ascertain quality or state, detect errors, or otherwise appraise)" or to "examine with care." Webster's, supra, 1170; see also American Heritage, supra, at 908 ("To examine carefully and critically, especially for flaws."). A duty to inspect suggests excavators must conduct a careful, critical examination of the excavation overall to determine whether it created any problems, not limited to exposed transmission facilities, which in this case were obliterated and therefore incapable of exposure.
*486 f 71. Considering the evidence in a light most favorable to Petitioners, I conclude Pro Electric has not demonstrated it is entitled to judgment as a matter of law. The record establishes that people were "looking at" the hole while auguring was ongoing, that lighting would not have revealed the severed lateral during auguring, and that dirt pushed into the sewer lateral would have made it difficult to identify. Those facts do not demonstrate that Pro Electric conducted an inspection of the completed excavation; accordingly, whether an inspection occurred before backfilling presents a genuine issue of material fact.
Ill
f 72. When abrogating common law doctrine in Holytz, this court showed appropriate attention to its constitutional role by recognizing the legislature's ultimate authority to decide the scope of immunity as a matter of policy. The legislature responded by enacting a statute that now allows immunity only "for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions." By continuing to immunize acts bearing no resemblance to legislative or judicial functions, this court once again abandons the plain language of the governmental immunity statute in favor of an archaic judicial doctrine rooted in shielding the government from answering for its tortious wrongs against the people. Because this artificial judicial invention strays from the legislature's formulation, and because Pro Electric has not met the standard for summary judgment, I would reverse the decision of the court of appeals; therefore, I respectfully dissent.
f 73. I am authorized to state that Justice DANIEL KELLY joins this dissent.

 "Excavator" is a defined term under Wis. Stat. § 182.0175(1)(bm).